**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| KIT MASON, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>CASEY'S RETAIL COMPANY, CASEY'S GENERAL STORES, INC., and CASEY'S MARKETING COMPANY,<br><br>*Defendants*. | Case No. 4:25-cv-00361-SMR-SBJ<br><br>**DEFENDANTS' RESISTANCE TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION** |

Defendants Casey's Retail Company, Casey's General Stores, Inc., and Casey's Marketing Company (collectively "Casey's" or "Defendants") hereby resist Plaintiff's Motion for Temporary Injunction (the "Motion"). In this lawsuit, Plaintiff seeks purely monetary relief. Plaintiff therefore has not made, and cannot make, a showing of irreparable harm to justify a preliminary injunction.

## I.    BACKGROUND

On August 28, 2025, Plaintiff initiated this lawsuit by filing a Class Action Petition in the Iowa District Court for Polk County. (*See* ECF No. 1-1 ("Pet.").) In his pleading, Plaintiff alleges that Casey's "operates a chain of convenience stores primarily in the Midwest, with more than 2,500 stores in sixteen states." (*Id*. at ¶ 7.) He further alleges that Casey's advertises in-store promotional discounts on various items such as canned drinks and snacks. (*Id.* ¶ 1; ECF No. 3 ("Mot.") at 2.) Plaintiff's Petition and present Motion are premised on his presumption that Casey's has a "practice" of failing to apply advertised promotional discounts at the point of sale. (Pet. ¶ 1; Mot. at 1.)

1

Plaintiff purports to bring claims on behalf of himself and two putative classes: (1) "[a]ll citizens of the State of Iowa who, from August 28, 2023 to the present, purchased merchandise from one of Defendant's stores in Iowa subject to an advertised discount who did not receive the discount at the point of sale" (the "Iowa Class"); and (2) "[a]ll persons who, from August 28, 2023 to the present, purchased merchandise from one of Defendant's stores subject to an advertised discount who did not receive the discount at the point of sale" (the "Nationwide Class"). (Pet. ¶ 21; Mot. at 2.)

In his Petition, Plaintiff identifies eleven transactions for which he believes Casey's overcharged a customer for purchased products. (*See* Pet. ¶¶ 8–14.) For each transaction, Plaintiff included an alleged photo of a promotion and a snippet of a receipt for the purchase of items that were allegedly the subject of that promotion. (*See id*.) The transactions described in the Petition were for items such as Four Loko canned beverages, Smirnoff Ice canned beverages, Nerds bagged candy, and Blue Moon canned beer. (*Id.*) These eleven transactions relate to only eight separate promotions; for three of the identified promotions, the Petition alleges two erroneous transactions each. (*See id*.) With respect to these eleven transactions, the amount that Plaintiff believes the purchaser was overcharged ranges from $1.00 to $7.00. (*Id.*) The total amount of alleged overcharges reflected on the receipts is less than $40.00. (*Id.*)

While the photos and snippets of receipts contain some information about the alleged overcharges, the information Plaintiff provided is incomplete. The Petition identifies Plaintiff as the purchaser for only two of the eleven transactions; he is not identified as the purchaser for any of the other nine transactions, nor is any other purchaser identified. (*Id.*) Of the eleven transactions, the Petition only identifies the location of the relevant store for four of them, and those four stores are all located in Iowa. (*Id.*) The Petition identifies the transaction date for only eight of the eleven

transactions, all of which were in either July or August 2025. (*Id.* ¶¶ 8–14, 21.) For three of the eleven transactions, Plaintiff provides almost no detail at all, failing to identify the purchaser, the location of the store, *or* the transaction date. (*Id.* ¶¶ 8–14.)

Despite the limited scope of the alleged transactions, the Petition claims—in conclusory fashion, upon information and belief, and without any factual allegations for support—that "similar misleading in-store advertisements were present across Defendant's network of stores, including but limited to [sic[1]] those in Iowa, Nebraska, Minnesota, Missouri, and Wisconsin." (*Id.* ¶ 18.) The Petition contains claims for fraud by omission, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and violations of Iowa Code Chapter 714H (the Iowa Consumer Fraud Act, or "ICFA"). (*Id*. at ¶¶ 31–74.) Plaintiff seeks various forms of monetary damages. (*See id.* at 29.) But he notably does *not* seek any specific injunctive or other equitable relief in his initial pleading. (*Id.*)

On September 17, 2025, Plaintiff filed a Motion for Temporary Injunction pursuant to Iowa Rule of Civil Procedure 1.1502. (ECF No. 1-2 at 143–49; *see also* Mot.) Instead of targeting the specific promotions or stores related to the transactions set forth in the Petition, Plaintiff instead purports to seek "an order for a temporary injunction (1) prohibiting Defendant from not applying the advertised discounts at the register as promised; and (2) prohibiting Defendant from collecting taxes on the amount that should have been discounted." (Mot. at 7.)

On September 26, 2025, Defendants removed the lawsuit to this Court prior to the deadline to respond to Plaintiff's Motion and noted to this Court that the Motion was pending. (ECF Nos. 1, 2.) On September 29, 2025, the Court separately docketed the Motion and set a deadline for

---

[1] Defendants presume that Plaintiff intended to plead his claims as "including but *not* limited to" the listed states. Defendants proceed with this Resistance accordingly.

responses. (*See* ECF No. 3.) In the two weeks since the Court docketed the Motion, Plaintiff has not amended or supplemented the Motion to address the applicable federal standards for preliminary injunctive relief.

## II.    LEGAL STANDARD

A motion for temporary injunction that is pending in Iowa state court at the time a case is removed is analyzed under the federal standards for preliminary injunctions under Federal Rule of Civil Procedure 65. *See Pro Edge, L.P. v. Gue*, 374 F. Supp. 2d 711, 735 (N.D. Iowa 2005); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1243–44 (N.D. Iowa 1995).

"Injunctive relief is an 'awesome power vested in the district court,' and issuance of an injunction is not done lightly." *Miljas v. Greg Cohen Promotions, LLC*, 536 F. Supp. 3d 409, 425 (S.D. Iowa 2021) (quoting *Iowa Right to Life Comm., Inc. v. Smithson*, 750 F. Supp. 2d 1020, 1028 (S.D. Iowa 2010)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023). "The movant bears the burden of demonstrating the preliminary injunction is warranted." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1016 (8th Cir. 2023). A preliminary injunction "should not be granted unless the movant . . . carries [its] burden" to make "a clear showing" that such relief is warranted. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal quotation omitted).

When deciding whether to issue a preliminary injunction, courts consider four factors, sometimes called the "*Dataphase* factors":

(1) Plaintiff's likelihood of success on the merits of his claim; (2) the threat of irreparable harm or injury to Plaintiff without preliminary relief; (3) the balance of equities, weighing the harm suffered by Plaintiff versus the harm to other parties because of an injunction; and (4) the public interest.

*Miljas*, 536 F. Supp. 3d at 425–26 (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113

(8th Cir. 1991) (en banc)). The most important of these factors is the risk of irreparable harm, which is a condition precedent to the issuance of a preliminary injunction. *Id.* (citing *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)); *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991) (stating that "the threshold inquiry is whether the movant has shown the threat of irreparable injury," and that a movant's failure to do so "ends the inquiry" (quotation omitted)). Plaintiff bears the burden of showing that these factors weigh in favor of issuing of a preliminary injunction. *Miljas*, 536 F. Supp. 3d at 426.

Furthermore, under Rule 65, an order granting a preliminary injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). Moreover, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." *Id.* r. 65(c).

## III.    ARGUMENT

This Court should deny Plaintiff's Motion because Plaintiff has failed to even address—much less satisfy—the federal standards for the issuance of a preliminary injunction including, most notably, irreparable harm.[2] The Court should deny Plaintiff's Motion for this reason alone.

---

[2] As stated above, Plaintiff neither revised nor amended the Motion to reflect the now-applicable federal standards, and Plaintiff's Motion speaks only to the Iowa standard. While "Iowa law applies *roughly* the same test as do federal courts to issuance of a preliminary injunction, . . . the Iowa standard may be more lenient." *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1244 (N.D. Iowa 1995) (emphasis added). As opposed to the *Dataphase* factors, Iowa state courts generally "consider the 'circumstances confronting the parties and balance the harm that a temporary injunction may prevent against the harm that may result from its issuance.'" *Max 100 L.C. v. Iowa Realty Co., Inc.*, 621 N.W.2d 178, 181 (Iowa 2001) (quoting *Kleman v. Charles City Police Dep't*, 373 N.W.2d 90, 96 (Iowa 1985)). Plaintiff's Motion fails to address the more stringent federal standard. If Plaintiff presents new arguments to address the federal standards for the first time in a reply brief in support of this Motion, Defendants respectfully reserve the right to seek leave to file a sur-reply to respond to those arguments in the first instance.

But aside from this glaring omission, Plaintiff's request fails to comply with other federal standards, including Rule 65's specificity and bond requirements.

### A.    Plaintiff Fails to Establish Irreparable Harm

The applicable *Dataphase* factors specifically require that the movant make a threshold showing of irreparable harm. "Irreparable harm occurs when a party has no adequate remedy at law," meaning that the party must have suffered more than only economic loss and must be unable to be "fully compensated through an award of damages." *Beber v. NavSav Holdings, LLC*, 140 F.4th 453, 461 (8th Cir. 2025) (internal quotation omitted); *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019). Simply put, economic loss alone cannot constitute irreparable harm if the losses are recoverable through monetary damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Moreover, the movant must establish "more than the mere possibility" of irreparable harm and demonstrate an actual *likelihood* of irreparable non-monetary harm. *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (citing *Winter*, 555 U.S. at 20). "The inquiry into whether a party will suffer irreparable harm is independent of the assessment into the merits of the claims." *MMIC Ins., Inc. v. Obstetric & Gynecologic Assocs. of Iowa City & Coralville*, No. 3:23-cv-00039, 2023 WL 9692472, at *5 (S.D. Iowa Dec. 20, 2023) (citing *Gen. Motors Corp.*, 563 F.3d at 318).

Plaintiff's Petition—which is predicated on claims of overcharging for items purchased at convenience stores—seeks purely monetary relief. Plaintiff therefore has not made, and *per se* cannot make, a showing of irreparable harm to justify a preliminary injunction.

*Lawson v. DoorDash, Inc.* examined a plaintiff's claim of irreparable harm in the context of alleged overcharging. *See* 658 F. Supp. 3d 707, 710–11 (W.D. Mo. 2023). There, the plaintiff sued DoorDash, Inc., a company that maintains a website through which individuals can order

food from restaurants to be delivered. *Id.* The plaintiff alleged that DoorDash's representation that there was no delivery charge for certain deliveries was "misleading because the service charge and the price differential on menu items each constitute hidden delivery fees." *Id.* at 711. Accordingly, the plaintiff brought false-advertising and unfair-competition claims against DoorDash and sought a preliminary injunction to prohibit DoorDash "from displaying its '$0 delivery fee' advertisements." *Id.* The district court denied the plaintiff's request for injunctive relief in part because the plaintiff had an adequate remedy at law and thus failed to show irreparable harm. *See id.* at 715–16. The court reasoned that the plaintiff's injuries, even though they stem from allegedly fraudulent practices, are nonetheless "economic in nature, and it is readily apparent that they can be remedied through an award of damages." *Id.* at 715.

Like in *Lawson*, Plaintiff argues here that he paid more for the items he purchased than he expected. (*See* Mot. at 4.) Under any reading of the Petition, Plaintiff is plainly alleging purely economic losses, and his Prayer for Relief seeks exclusively monetary damages as compensation. (Pet. at 29.) In his Motion, Plaintiff makes no effort to explain why monetary damages would not be sufficient to remedy any alleged harm. Therefore, Plaintiff is not entitled to injunctive relief. *See MMIC Ins.*, 2023 WL 9692472, at *5–8 (denying preliminary injunction where plaintiff failed to show irreparable harm); *Thrasher v. Grip-Tite Mfg. Co., Inc.*, 535 F. Supp. 2d 937, 944–45 (S.D. Iowa 2008) (same).

Plaintiff's failure to establish irreparable harm is fatal to his Motion, and this Court need not consider any of the other *Dataphase* factors. *See Beber*, 140 F.4th at 463 ("Because no irreparable harm will . . . befall [the movants], we do not reach the remaining [*Dataphase*] factors."); *Phyllis Schlafly*, 924 F.3d at 1009 ("[F]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction."); *Thrasher*, 535 F. Supp. 2d at 945 (denying

preliminary injunction because the plaintiff did not demonstrate irreparable harm). But even if this Court were to consider them—*i.e.*, Plaintiff's likelihood of success on the merits; the balance of equities between the harm suffered by Plaintiff against the harm to Defendants from the injunction; and any applicable public interest—it should still deny Plaintiff's Motion. On balance, the totality of these factors cannot weigh in favor of Plaintiff's proposed injunction because the limited concrete harm Plaintiff has alleged (*i.e.*, less than $40) is substantially imbalanced against the sweeping scope of his requested injunction.

In sum, Plaintiff has failed to show the risk of irreparable harm. This Court should deny the Motion for failure to make this threshold showing.

**B.      Plaintiff's Request for an Injunction Does Not Comport with Federal Rule of Civil Procedure 65**

In addition to the Motion's failure to satisfy the threshold *Dataphase* factor, Plaintiff's requested injunction also fails to satisfy Rule 65's facial requirements. First, the requested injunction is impermissibly vague. Second, the Motion fails to address Rule 65's security requirement. This Court should therefore deny Plaintiff's Motion.

**1.      Plaintiff's Requested Injunction Is Impermissibly Vague**

Rule 65 requires that any motion for preliminary injunction empower the Court to enter an injunction that "describe[s] in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The case law sets forth two reasons for this specificity requirement. First, "[i]t prevents uncertainty on the part of those faced with injunctive orders and gives them explicit notice of what conduct is lawful." *Daniels v. Woodbury County*, 742 F.2d 1128, 1134 (8th Cir. 1984); *see also Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) ("[I]t is the basic intent of Rule 65(d) that those against whom an injunction is issued should receive fair and precisely drawn

notice of what the injunction actually prohibits."). "Second, it allows a review court 'to know precisely what it is reviewing.'" *Daniels*, 742 F.2d at 1134 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476–77 (1974)). Plaintiff's proposed injunction satisfies neither of these purposes.

First, Plaintiff's requested injunction does not provide Casey's with reasonable notice of what conduct is prohibited. The requested injunction would "prohibit[] Defendant from not applying the advertised discounts at the register as promised." (Mot. at 7.) Even putting aside the double-negative inherent in this request (which converts it from a prohibitory to a mandatory injunction), the request is ambiguous and subject to numerous, distinct, and varied good-faith interpretations of its terms.

For example, Plaintiff does not specify what he means by "the advertised discounts." (*See id.*) This language could potentially refer to many different types of discounts, including but not limited to: the eight specific promotions identified in the Petition, certain of which have already expired; all Casey's-sponsored promotions generally; all promotions or discounts that could potentially apply to any merchandise sold at Casey's; and/or or some other universe of "advertisements" entirely. Further, Plaintiff's request is devoid of any geographic detail or limitations, meaning it is unclear if Plaintiff intends for the injunction to apply to only the Casey's stores identified in the Petition, to the entire network of thousands of Casey's stores across all states, or to some other undefined subset of stores. Next, Plaintiff does not specify what he means by "at the register"—Casey's does not know if the injunction applies only to transactions that take place inside a Casey's store and involve an actual cash register or if Plaintiff also means it to apply to other types of transactions, such as online food orders or pay-at-the-pump gas purchases. Finally, all the transactions identified in the Petition occurred during a two-month period (July and August

2025 (*id.* ¶¶ 8–14)), but Plaintiff's proposed injunction does not contain any time limitations, either as a date certain or as tied to the end date of any potentially relevant promotion(s).

Simply put, without understanding exactly what Plaintiff seeks to prohibit, neither Casey's nor this Court can know what steps would be needed to comply with the requested injunction. *See, e.g.*, *Rural Cmty. Workers All. v. Smithfield Foods*, 459 F. Supp. 3d 1228, 1245 (W.D. Mo. 2020) (finding a proposed preliminary injunction impermissibly vague because "Plaintiffs do not identify which policies should be eliminated, what constitutes 'reasonable steps,' or why [the defendant]'s current policies are insufficient").

Second, the lack of specificity with respect to Plaintiff's proposed injunction means any reviewing court will not readily be able to tell if Casey's is complying with the injunction. *See id.* If this Court were to enter an injunction using Plaintiff's impermissibly vague definition, Casey's could potentially face a contempt action every time a customer thinks (even wrongly) that she was overcharged for any product sold at any Casey's store. A reviewing court would, in turn, have to adjudicate an unknown volume of these pedestrian disputes. Such a result would be neither practicable, efficient, nor fair to Casey's or to any reviewing court.

Finally, Plaintiff's request for an order "prohibiting Defendant from not applying the advertised discounts at the register as promised" is coterminous with ICFA's existing statutory prohibition on false advertising. *See* Iowa Code § 714H.3(1) ("A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise . . . ."). In other words, Plaintiff

appears to seek a court order generically requiring Casey's to follow the law. But "an injunction which does little or nothing more than order the defendants to obey the law is not specific enough." *Daniels*, 742 F.2d at 1134.

### 2.    Plaintiff Fails to Satisfy Rule 65's Security Requirement

In addition to the Motion's failure to meet Rule 65's specificity requirement, the Motion also fails to meet Rule 65's security requirement. "Rule 65 of the Federal Rules of Civil Procedure requires the moving party to post bond to obtain preliminary injunctive relief." *Miljas*, 536 F. Supp. 3d at 434. This requirement is "clear and unambiguous." *Id.* The bond must be "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *Id.* (quoting Fed. R. Civ. P. 65(c)).

In his Motion, Plaintiff does not offer a proposed bond amount for consideration.[3] Because of the impermissibly vague terms of the proposed injunction, Casey's does not know what steps it may need to take to be able to comply with it. This in turn means Casey's cannot assess the potential harm it would incur if Plaintiff's proposed injunction is wrongly granted. And this again in turn means Casey's cannot calculate an appropriate amount to demand for a bond.[4] Given that Plaintiff's allegations do not support the sweeping injunctive relief he requests, and that Plaintiff fails to offer any additional evidence to substantiate his request, the Court likewise does not have enough information to calculate an appropriate bond amount. Accordingly, Plaintiff has not

---

[3] Plaintiff initially filed the Motion in Iowa state court, which has a different standard and procedure with respect to security requirements for injunctions. *See* Iowa R. Civ. P. 1.1508. Plaintiff also failed to address the Iowa standard or procedure in his Motion.

[4] If this Court decides to grant the Motion and enter a preliminary injunction, either as proposed by Plaintiff or as amended by the Court, Casey's reserves the right to propose an appropriate bond amount once the terms of the injunction are disclosed.

satisfied—and cannot satisfy—Rule 65's security requirement. For this reason, Plaintiff's Motion should be denied.

## V.      CONCLUSION

For the reasons stated above, this Court should deny Plaintiff's Motion for Temporary Injunction.

Dated: October 14, 2025                    **FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Nick Klinefeldt*
Nicholas A. Klinefeldt, AT0008771
David Yoshimura, AT0012422
Carolyn A. Gunkel, AT0008944
Emily R. O'Brien, AT0015757
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
         *david.yoshimura@faegredrinker.com*
         *carolyn.gunkel@faegredrinker.com*
         *emily.obrien@faegredrinker.com*

**ATTORNEYS FOR DEFENDANTS
CASEY'S RETAIL COMPANY, CASEY'S
GENERAL STORES, INC., AND CASEY'S
MARKETING COMPANY**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was served upon all parties of record through the Court's CM/ECF electronic filing system.

*/s/Paulette Ohnemus*
_____