# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KIT MASON, individually and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>v.<br><br>CASEY'S RETAIL COMPANY, CASEY'S GENERAL STORES, INC., and CASEY'S MARKETING COMPANY,<br><br>        Defendants. | **Case No. 4:25-cv-00361-SMR-SBJ**<br><br><br>**PLAINTIFF'S RESISTANCE TO DEFENDANTS' MOTION TO DISMISS AND STRIKE CLASS ALLEGATIONS** |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTUAL BACKGROUND.................................................... 2

III.    LEGAL STANDARD ....................................................................................... 4

IV.     ARGUMENT ...................................................................................................... 5

    A.      Plaintiff's Fraud-Based Claims Are Plausible. ....................................... 5

        1.      The Plaintiff's Claims of Fraud by Omission, Fraudulent
                Misrepresentation and Violation of the ICFA Are Plead
                With Particularity. ....................................................................... 5

        2.      The Plaintiff Has Adequately Plead Materiality. ..................................... 10

    B.      Plaintiff's Fraud By Omission and Fraudulent Misrepresentation
        Claims Sufficiently Plead Intent. ........................................................... 13

    C.      Plaintiff's Negligent Misrepresentation Claim is Well Pled. ................ 15

    D.      Plaintiff's Unjust Enrichment Claim is Well Pled. ................................ 17

    E.      The Court Should Deny the Motion to Strike Plaintiff's Class Allegations. ........ 18

        1.      Plaintiff's Proposed Classes Are Not 'Fail-Safe' Classes. ........................ 19

        2.      Defendants Have Not Shown That A Nationwide Class
                Cannot Be Certified on Plaintiff's Unjust Enrichment,
                Fraud, and Negligent Misrepresentation Claims. .................................... 21

V.      CONCLUSION................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Adam v. CHW Grp., Inc.*,
    2021 WL 7285905 (N.D. Iowa Sept. 9, 2021) ........................................................................ 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................ 4

*AT&T Corp. v. Aventure Commc'n Tech., LLC*,
    207 F. Supp. 3d 962 (S.D. Iowa 2016) .................................................................................. 17

*Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*,
    450 F.3d 816 (8th Cir. 2006) .................................................................................................. 14

*Beeck v. Aquaslide 'N' Dive Corp.*,
    350 N.W.2d 149 (Iowa 1984) .................................................................................................. 15

*BJC Health Sys. v. Columbia Cas. Co.*,
    478 F.3d 908 (8th Cir. 2007) .................................................................................................. 19

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) .................................................................................. 20

*Chen v. Target Corp.*,
    2022 WL 1597417 (D. Minn. May 19, 2022) ........................................................................ 22

*Cleveland v. Whirlpool Corp.*,
    550 F.Supp. 3d 660 (D. Minn. 2021) ...................................................................................... 18

*Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*,
    888 N.W.2d 644 (Iowa 2016) .................................................................................................. 16

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    999 F.3d 1080 (8th Cir. 2021) .......................................................................................... 18, 19

*Drobnak v. Andersen Corp.*,
    561 F.3d 778 (8th Cir. 2009) .................................................................................................. 18

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
    270 F.3d 645 (8th Cir. 2001) .................................................................................................. 13

*Gibson v. ITT Hartford Ins. Co.*,
    621 N.W.2d 388 (Iowa 2001) .................................................................................................. 13

*Grove v. Principal Mut. Life Ins. Co.*,
    14 F. Supp. 2d 1101 (S.D. Iowa 1998) .................................................................................. 12

*Gunderson v. ADM Inv. Servs., Inc*.,
  1997 WL 570453 (N.D. Iowa Apr. 17, 1997) .......................................................... 10

*Huck v. Wyeth, Inc.*,
  850 N.W.2d 353 (Iowa 2014) ................................................................................. 15

*Huskey v. Colgate-Palmolive Co.*,
  486 F. Supp. 3d 1339 (E.D. Mo. 2020) ................................................................... 22

*In re Folgers Coffee*,
  2021 WL 7004991 (W.D. Mo. Dec. 28, 2021) ......................................................... 22

*In re SuperValu, Inc.*,
  2019 WL 2306267 (8th Cir. May 31, 2019) ............................................................... 4

*Iowa League of Cities v. E.P.A.*,
  711 F.3d 844 (8th Cir. 2013) ...................................................................................... 4

*Johnson v. Bobcat Co*.,
  175 F. Supp. 3d 1130 (D. Minn. 2016) ...................................................................... 6

*Jones v. Lancaster Lumber, Inc*.,
  2021 WL 6618709 (S.D. Iowa Mar. 5, 2021) ......................................................... 10

*Lizama v. Venus Lab'ys, Inc.*,
  679 F. Supp. 3d 848 (E.D. Mo. 2023) ..................................................................... 21

*Miller v. Elliott Aviation Aircraft Sales Inc*.,
  2014 WL 12601040 (S.D. Iowa Mar. 31, 2014) ........................................... 10, 12, 13

*Moeller v. Samsung Elecs. Am., Inc*.,
  623 F. Supp. 3d 978 (S.D. Iowa 2022) ...................................................................... 9

*MYA Logistics, LLC v. Phoenix Newton LLC*,
  2019 WL 5106773 (S.D. Iowa Mar. 27, 2019) .......................................................... 9

*Olson v. Ameristar Casino Council Bluffs*,
  2019 WL 13217157 (S.D. Iowa June 5, 2019) ......................................................... 13

*Olson v. Ameristar Casino Council Bluffs, LLC*,
  2019 WL 13217157 (S.D. Iowa June 5, 2019) ...................................................... 4, 5

*Oom v. Michaels Companies Inc.*,
  2017 WL 3048540 (W.D. Mich. July 19, 2017) ....................................................... 20

*Orduno v. Pietrzak*,
  932 F.3d 710 (8th Cir. 2019) ................................................................................... 19

*Pitts v. Farm Burau Life Ins. Co*,
  818 N.W.2d 91 (Iowa 2012) .................................................................................... 15

iv

*Porous Media Corp. v. Pall Corp.*,
  186 F.3d 1077 (8th Cir. 1999) ................................................................... 9

*Remmes v. Int'l Flavors & Fragrances, Inc.*,
  453 F. Supp. 2d 1058 (N.D. Iowa 2006) .................................................. 14

*Rios v. State Farm Fire & Cas. Co.*,
  469 F. Supp. 2d 727 (S.D. Iowa 2007) ..................................................... 19

*Rouse v. H.B. Fuller Co.*,
  694 F. Supp. 3d 1149 (D. Minn. 2023) ..................................................... 21

*Schaller Tel. Co. v. Golden Sky Sys., Inc.*,
  298 F.3d 736 (8th Cir. 2002) ...................................................................... 5

*Smith v. Peterson*,
  282 N.W.2d 761 (Iowa Ct. App. 1979) .................................................... 10

*State ex rel. Miller v. Vertrue, Inc*,
  834 N.W.2d 12 (Iowa 2013) ....................................................................... 11

*State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*,
  637 N.W.2d 142 (Iowa 2001) .................................................................... 17

*Tuggle v. Wells Fargo, N.A.*,
  2021 WL 6804071 (S.D. Iowa Sept. 1, 2021) ........................................... 15

*Walker v. World Tire Corp.*,
  563 F.2d 918 (8th Cir. 1977) ..................................................................... 19

*Wells Fargo Bank, N.A. v. Windows USA, LLC*,
  484 F. Supp. 3d 645 (S.D. Iowa 2020) .................................................. 9, 10

*Wheeler v. Subaru of America, Inc*,
  451 F.Supp. 3d 1034 (D. Minn. 2020) ...................................................... 18

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ..................................................................... 19

**Statutes**

Federal Rules of Civil Procedure 8 ................................................................ 4

Federal Rule of Civil Procedure 9 ............................................................. 2, 5

Federal Rule of Civil Procedure 23 ............................................. 2, 19, 21, 22

IAC Chapter 203 701-203.1(423) .......................................................... 12, 15

IAC Chapter 714H.3(1) .............................................................................. 14

**Other Authorities**

Restatement (Second) of Torts § 552 ...................................................................... 15, 16

## I.    INTRODUCTION

Defendants Casey's Retail Company, Casey's General Stores, Inc. and Casey's Marketing Company ("Defendants") Motion to Dismiss and Strike Class Allegations (the "MTD") (Dkt. 12) highlights that Plaintiff's allegations of systemic overcharging at the corporate level are well-pled and plausible as demonstrated by their own assiduous avoidance of any discussion of: (1) their duty to announce product pricings, (2) their voluntary undertaking to display "sales" prices differing from every day product prices, (3) their cash register system failing to accurately charge "sales" prices for purchases, and (4) their competitors' ability to correctly charge "sales" prices for many of the same deals.

While the Petition was clear enough for Defendants to craft removal papers, the pictures of signs and copies of receipts included in the Petition are now suddenly so opaque for motion to dismiss purposes that Defendants cannot determine if the overcharges were a short-term failure, a long-term point of sale system problem, or even that the problem has been fixed. What is known so far is that the problem is not random as it always favors Defendants and results in customer overcharges and improper sales tax collections. What is also known is that the sales signage, akin to a unilateral contract offer, simply required the unassuming patron to present that number of items at the cash register entitling the person to the discount thereby confirming the materiality of the offer terms. Now, Defendants ask this Court to ignore pictures and photographs of completed sales, find that Defendants are immune from even posting product prices they must honor since it is "information," and ask this Court to apply unprecedented, new tests derived from "modified" case quotations.

The MTD does not challenge most of the elements contained in many of the Plaintiff's causes of action because there are no legal or factual grounds to do so. Instead, Defendants offer a handful of half-baked attacks, red-herrings, and inapposite case law; and then altogether ignore

and/ or contort the plain and plausible facts pled in the Petition. Insofar as Plaintiff's fraud claims are governed by the heighted requirements of Federal Rule of Civil Procedure 9(b), Plaintiff's allegations meet those requirements.

In addition, Defendants' strike efforts are premature and baseless and will properly be evaluated at the class certification stage. Consistent with Federal Rule 23 and Eighth Circuit jurisprudence, the Court will rigorously evaluate the merits of Plaintiff's class claims after discovery. Defendants' strike effort appears to be nothing more than a frivolous attempt to infect this litigation at this early stage with premature arguments because they are unable to refute Plaintiff's allegations, which the Court may draw reasonable inferences from, with any viable responses.

At bottom, Defendants cannot ignore that it developed advertisements containing promises related to prices for "sales" of specific items in certain numbers which it failed to honor later at the point of sale. Defendants' omissions and representations (in the form of their own shelf-marketing-tags) induced Plaintiff to buy as instructed.  He relied on Defendants' statements simply by presenting the items as required to receive a promised discount. The Petition contains a litany of photographs depicting Defendants' signature red- and yellow-colored signs with misrepresentations by Casey's and Plaintiff's black and white colored receipts which show the extent of Defendants' overcharging deception. Defendants' conduct is unfair. The Plaintiff and putative class have suffered damages because of Defendants' deception.

Nothing contained in the Defendants' motion to dismiss is evocative and/or works to dismiss Plaintiff's plausible claims. Defendants' motion should be denied in its entirety.

## II.    RELEVANT FACTUAL BACKGROUND

Defendants operate a chain of stores primarily located in the Midwest with more than 2,500 stores in sixteen states. Petition (Dkt. 1) at ¶ 7. Plaintiff purchased items advertised to be on sale

upon presenting the advertised number of items at Defendants' stores' cash registers located in Humeston, Corydon, Urbandale, and Des Moines, Iowa. *Id*. at ¶¶ 9-14. "Upon information and belief, similar misleading in-store advertisements were present across Defendants' network of stores, including but limited to those in Iowa, Nebraska, Minnesota, Missouri, and Wisconsin." *Id*. at ¶ 18.

The Petition includes eight photos of Defendants' representations on its own store-branded displays in the stores. *Id*. at ¶¶ 8-14. Defendants developed and issued (mainly in its well-recognized corporate yellow and red colors) the "sale" representations which offer prices for items and state "AFTER INSTANT REBATE DISCOUNT AUTOMATICALLY GIVEN AT REGISTER." *Id*; ¶ 17 ("The advertisements expressly state that rebates will be given at the register").

Defendants offer a reward program called "Casey's Rewards." *Id*. at ¶ 15.

Defendants' representations induced Plaintiff to make his purchases confirmed by presenting the advertised number of items needed to obtain the discount. *Id*. at ¶ 45. Plaintiff relied on the representations by his actions. *Id*. at ¶ 16.

The Petition also includes photos of eight corresponding receipts Plaintiff received after purchasing the items – all of which show that Plaintiff paid more at the point of sale than the advertisements promised. *Id*. at ¶¶ 16, 8-14, 9 (advertisement states two cans of FOUR LOKO ("2/$4.00") yet the corresponding receipt shows $3.50 per can). Concurrently, the receipts show that Defendants' failure to honor the posted deals resulted in Plaintiff also being improperly charged sales tax for certain purchases. *Id*.

The class definitions sought are:

All persons who, from August 28, 2023 to the present, purchased merchandise from one of Defendant's stores subject to an advertised discount who did not receive the discount at the point of sale (the "Nationwide Class")

All citizens of the State of Iowa who, from August 28, 2023 to the present, purchased merchandise from one of Defendant's stores in Iowa subject to an advertised discount who did not receive the discount at the point of sale (the "Iowa Class" and, with the Nationwide Class, the "Classes")

*Id*. at ¶ 21.

## III.    LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 8, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a party need only provide enough facts and allegations "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Evaluating a complaint for plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "The non-moving party is entitled to the benefit of all reasonable inferences that may be drawn from the allegations set forth in the complaint." *Olson v. Ameristar Casino Council Bluffs, LLC*, No. 1:19-CV-00005-SBJ, 2019 WL 13217157, at *1 (S.D. Iowa June 5, 2019) (Mag. J. Jackson) (citing *In re SuperValu, Inc.*, No. 18-1648, 2019 WL 2306267, at *5 (8th Cir. May 31, 2019)); *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (at the pleading stage a petitioner can move forward with "general factual allegations of injury," whereas to survive a summary judgment motion, a party "must set forth by affidavit or other evidence specific facts.") (citations omitted).

## IV.     ARGUMENT

### A.     Plaintiff's Fraud-Based Claims Are Plausible.

1.     **The Plaintiff's Claims of Fraud by Omission, Fraudulent Misrepresentation and Violation of the ICFA Are Plead With Particularity.**

The Federal Rule of Civil Procedure 9(b) and this Circuit require fraud claims to include the location, time, contents of the representation and who made them, and explain why the statements are fraudulent. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citations omitted).

There is nothing conclusory about the Plaintiff's allegations, they satisfy the Rule 9(b) requirements and provide Defendants "fair notice of the nature and basis or grounds" for the claims. *Olson*, 2019 WL 13217157, at *1 (Mag. J. Jackson). Basically, Casey's advertised "sales" they didn't deliver across multiple products and multiple locations.  The Petition in words and pictures graphically and easily meets even the heightened standard urged by Defendants to present facts outlining the who, what, where, and when supporting Plaintiff's allegations. *First*, the locations and times where Plaintiff viewed Defendants' misrepresentations are Casey's stores located in Humeston, Iowa on July 10, 2025. Petition at ¶¶ 8 and 9 (receipt stating Humeston, Iowa and time of 11:40); Corydon, Iowa on July 10, 2025. Petition at ¶¶ 11, 12 (receipt stating Corydon, Iowa and time of 10:49); Urbandale, Iowa on August 19, 2025. Petition at ¶ 14 (receipt stating Urbandale, Iowa and time of 18:17); and Des Moines, Iowa on August 19, 2025. Petition at ¶ 14 (receipt stating Des Moines, Iowa and time of 17:43).

*Second*, Defendants' misrepresentations were made to the purchaser, Plaintiff Kit Mason as issued directly by Defendants. The Petition makes clear that "Plaintiff purchased certain merchandise … as follows." Petition at ¶¶ 8 (showing that actual advertisements which Plaintiff observed), ¶ 11; ¶ 61 ("There was a sale of merchandise from Defendants to Plaintiff");  ¶ 47

5

(Plaintiff "purchased the advertised merchandise); ¶¶ 8-14 (signage clearly states "Casey's" in red ink); ¶ 65 ("Defendants advertised certain discounts on merchandise"); ¶ 47 (Defendants "advertised the merchandise"). The Petition also includes black and white copies of the receipts which Plaintiff received as the purchaser. *Id.* at ¶¶ 9-14 (showing use of American Express and MasterCard cards).

*Third*, the specific contents of each of Defendants' representations[1] are as follows (Petition at ¶ 8, depicting yellow and red advertisements including "Casey's" in the corner and stating "DISCOUNT AUTOMATICALLY GIVEN AT REGISTER"):



Petition at ¶ 11:



Petition at ¶ 14:

---

[1] *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1146 (D. Minn. 2016) (finding that misrepresentations had been sufficiently plead where Plaintiff identified specific promotional material as well as particularized content).



Petition at ¶ 14:



Petition at ¶ 14:



Petition at ¶ 14:



Petition at ¶ 14:



Petition at ¶ 14:



*Fourth*, Defendants' promises were fraudulent and not true. Plaintiffs were induced to buy the products and relied on Defendants' representations and promises. Petition at ¶¶ 34, 45. Photos of black and white Casey's receipts included in the Petition, *see* Petition at ¶¶ 9, 12-14, demonstrate that the prices represented for the purchase of that number of items were not honored at the point of sale. For instance, on July 10, 2025, Defendants advertised its 23.5oz CANS of FOUR LOKO for 2/$4.00 but actually charged Plaintiff at the point of sale $3.50 per can – which is .50 cents per can more than what Defendants promised. Petition at ¶¶ 8, 9. The receipts also show that pursuant to state law Defendants collected an improper sales tax. *Id*. By comparison, the Petition also shows that at competitors' stores, the same manufacturer's discount programs were able to successfully give the purchaser the promised discount.[2]

---

[2] The persistence across Defendants' stores and the fact that two of its competitors were able to get it right make Defendants' throw-away argument that this "is a fishing expedition" ring hollow. It is inconceivable that Defendants have not investigated the particulars about these store discount offers or all store discount offers to determine what has happened. Their complete silence in

Further, the Petition provides numerous examples of Defendants' overcharging practices at its different store locations over the course of weeks (with each representation being similar in nature)[3]. Petition at ¶¶ 8-14. *Wells Fargo Bank, N.A. v. Windows USA, LLC*, 484 F. Supp. 3d 645, 659 (S.D. Iowa 2020) (J. S. Rose) ("an inference may be drawn that the promising party had no existing intent to perform").

As supported by words and pictures Plaintiff's claims of fraud by omission, fraudulent misrepresentation and violation of the ICFA are plead with particularity. *See Moeller v. Samsung Elecs. Am., Inc*., 623 F. Supp. 3d 978, 987 (S.D. Iowa 2022) ("By alleging the date of the sale, language of the warranty, date and substance of her interactions with Samsung after a defect developed in the dishwasher, and substance of the information that was <u>not</u> disclosed, Moeller has sufficiently alleged the "who, what, when, where and how of her Iowa Consumer Fraud Act claim." (emphasis in original)); *see also MYA Logistics, LLC v. Phoenix Newton LLC*, No. 4:18-CV-00249-SBJ, 2019 WL 5106773, at *7 (S.D. Iowa Mar. 27, 2019) (Mag. J. Jackson) (emphasis in original) (noting that the court shall read allegations as a "whole" and accept "factual assertions as true."); *Jones v. Lancaster Lumber, Inc*., No. 4:20-CV-00259-SBJ, 2021 WL 6618709, at *8 (S.D. Iowa

---

briefing the TRO motion suggesting that these overcharges were an aberration or that the problems were identified and fixed is deafening.

[3] Plaintiff is aware that Defendants' deceptive advertising practices have also been complained and reported about at https://www.facebook.com/kcrgtv9/posts/the-caseys-convenience-store-chain-is-facing-a-potential-class-action-lawsuit-al/1348865236605779/ and https://www.reddit.com/r/Iowa/comments/1nur337/lawsuit_caseys_overcharges_by_not_honoring/. *See Porous Media Corp. v. Pall Corp*., 186 F.3d 1077, 1079 (8th Cir. 1999) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (courts can consider public records). Through discovery and public records request, Plaintiffs and the Court will learn more about Defendants' unfair practices and procedures. *See Moeller v. Samsung Elecs. Am., Inc*., 623 F. Supp. 3d 978, 987 (S.D. Iowa 2022) (finding that "[a]t this early stage of the case, the Court must read the Petition in the light most favorable to" Plaintiff and that the allegations give "rise to liability … to allow the case to reach the discovery stage.").

Mar. 5, 2021) (Mag. J. Jackson) (same); *Wells Fargo Bank, N.A.*, 484 F. Supp. 3d at 661 (J. S. Rose) (finding Rule 9(b) to have been met and that defendant "failed to even attempt performance"); *compare Gunderson v. ADM Inv. Servs., Inc.*, No. C 96-3148-MWB, 1997 WL 570453, at *11 (N.D. Iowa Apr. 17, 1997) (not reported) ("the complaints do not identify the actual content of the purported misrepresentations.").

Defendants' brief also inaccurately cites paragraph 16 of the Petition instead of paragraph 18, which it apparently intended, *see* MTD at p. 7, in claiming that it is improper for Plaintiff to allege that its network of stores uniformly advertise the deals in the same manner in which Plaintiff identified in the Petition (which provides the photos of Casey's red and yellow representations from stores located in Iowa, Petition at ¶¶ 8-14). Defendants point to nothing demonstrating that any of the signage was store specific. In addition to this being a premature class certification argument, Defendants offer no evidence that the "sales" misrepresentations it issues through its network of stores differ in any material way, especially given that competitors had the same deals.

## 2.    The Plaintiff Has Adequately Plead Materiality.

"A fact is material if it relays information to consumers that is likely to affect their choice of product or impact their conduct relating to the product." *Miller v. Elliott Aviation Aircraft Sales Inc.*, No. 4:13-CV-00161-JAJ, 2014 WL 12601040, at *14 (S.D. Iowa Mar. 31, 2014).

Defendants' arguments, MTD at pages 8-9, that (1) Plaintiff fails to allege that *he* himself considered the advertisements, and not just "reasonable consumers," and (2) Plaintiff does not allege that *his* purchasing decisions were affected, are without merit and unfounded.[4] The Petition

---

[4] Defendant offers a definition for materiality from *Smith v. Peterson*, 282 N.W.2d 761, 765 (Iowa Ct. App. 1979) which concerned an appeal of a judgment, where an extensive record existed with testimony, and not a motion to dismiss like here. Regardless, *Smith* helps Plaintiff because he, as *Smith* requires for materiality, was deceived and induced by Defendants' yellow and red representations and would not have purchased the items absent Defendants' statements. Petition at ¶¶ 45 (Plaintiff was induced).

is replete with facts which explain how Plaintiff himself was influenced and even provides his photos of the exact red and yellow representations he observed at Defendants' stores which expressly state that "rebates will be given at the register." Petition at ¶¶ 8-14, 11 (Petition clearly puts Defendants on notice that the "**Plaintiff purchased** certain merchandise…") (emphasis added), ¶ 17 (showing signage language that impacted decision to purchase). And the Petition plainly states that "Plaintiff purchased certain merchandise" after being induced to do so. ¶¶ 8, 45, 34 (Plaintiff "justifiable relied on" the statements), ¶ 70 (Plaintiff was not aware of Defendants' deception). Plaintiff's actions purchasing two instead of one item further supports materiality.

As an initial matter, Defendants' ask this Court to create a new ICFA materiality law test which requires both a misleading impression and that the misleading impression is likely to affect conduct. MTD at pages 7-9. For this proposition, they offer only *State ex rel. Miller v. Vertrue, Inc.* which discusses materiality. In support of a new, two-part test standard Defendants acknowledge that they "modified" the case quotation. However, upon close examination of the modified language, Defendants pointedly omitted the court's word choice of "hence," which was used to signify that a misleading impression leads to an impact on conduct. Defendants' brief substitutes the word "therefore" outside of the actual *Vertrue* quotation and to suggest that in view of this synonym this Court should recognize a two-part test where a Plaintiff must show both 1) import and 2) impact. That is not the law. Assuming, *arguendo*, this Court is inclined to recognize a new two-part test, Plaintiff meets both prongs as his conduct was affected in each purchase as evidenced by his actions in presenting the advertised number of items required to get the discount.

The express language contained in Defendants' voluntarily placed signage containing statements of action required to receive a discount is not conclusory or opinions or projections and Plaintiff found it to be important. *See Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101,

1110 (S.D. Iowa 1998); ¶ 33 (Plaintiff considered the advertisements to be "important" in making his purchase). Plaintiff observed and relied on Defendants' red and yellow representations. He was influenced and enticed by them (i.e., he took items to the register pursuant to the multi-purchase offer after he observed Defendants' colorful signage). Petition at ¶¶ 1, 16, 32 ("Defendants offered advertised discounts on merchandise"); ¶ 34 (Plaintiff "justifiably relied"); ¶ 45 ("Defendants intentionally and knowingly made these misrepresentations **to induce Plaintiff … to purchase the advertised products**") (emphasis added); ¶ 66 ("considered Defendants' advertisements material in deciding whether to purchase the merchandise"). *See Miller*, 2014 WL 12601040, at *10, 13 (emphasis added) (holding that a plaintiff need only "establish that the claim *could* be material," that the "primary goal of Rule 9(b) is to provide the Defendants with the opportunity to respond to allegations of fraud and to prepare a defense," and that the plaintiff was able to show that sales "statements were made to induce" the plaintiff).

Defendants are also required by regulations to collect taxes based upon the nature of the price displayed and the discount offer. *See* IAC Chapter 203 701-203.1(423). Beyond their affirmative duty to disclose the price with taxes, the Defendants voluntarily assumed a duty by creating and then placing product discount sales signs in their stores simply requiring the customer to present the requested number of items. Defendants make no mention of this duty in the MTD or whether it complied with Chapter 203 701-203.1(423). However, Plaintiff will probe this and other tax implications related to Defendants' deception in discovery.    Defendants had superior knowledge and understanding over their representations regarding the sales price and the amount of the sales price that was taxable (they sell items to customers pursuant to signage they created). Petition at ¶¶ 8-14, 26(b); *see Grove*, 14 F. Supp. 2d at 110, 1111 (citations omitted) (denying motion to dismiss fraud claim where Plaintiff sufficiently alleged that Defendants "made false

12

statements regarding existing material facts with the intent to induce plaintiffs to rely on such statements," and additionally noting "where a statement, in a business transaction, can be viewed as coming from one with superior knowledge of the subject-matter and is made to induce the listener to rely on it, such statement may be deemed a statement of fact rather than opinion."); *Miller*, 2014 WL 12601040, at *13 (citing *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 688 (8th Cir. 2001).

Lastly, Defendants' materiality argument, *see* MTD at page 7, claiming that it is left to "guess" which of its representations are deceptive, sounds more like a summary judgment motion argument which is improper at this stage of this litigation (because it would be predicated, and influenced by, a fulsome record which does not yet exist here). *See Olson v. Ameristar Casino Council Bluffs, LLC*, No. 1:19-CV-00005-SBJ, 2019 WL 13217157, at *4 (S.D. Iowa June 5, 2019) ("Defendants' argument raises fact issues as to the applicability of the statutes of limitation that cannot be determined within the confines of the amended complaint").

In sum, Defendants' representations affected Plaintiff's "choice" and therefore Plaintiff's fraud claims sufficiently plead materiality. *Miller*, 2014 WL 12601040, at *14 ("Miller could establish that the representations made regarding the damage to the airplane impacted his decision to purchase the aircraft; thus, these representations may be material.").

### B. Plaintiff's Fraud By Omission and Fraudulent Misrepresentation Claims Sufficiently Plead Intent.

An element for a claim of fraudulent misrepresentation requires that "the defendant intended to deceive the plaintiff." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001).[5] "To establish a claim of fraud by omission," Plaintiff is required to show the "existence of

---

[5] *See Miller*, 2014 WL 12601040, at *14 (noting that if a pled claim for fraudulent misrepresentation is found to exist then a claim for "common-law fraud" also survives).

a duty to disclose." *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 821 (8th Cir. 2006). Plaintiff's ICFA claim is not cabined to omissions as Defendants' failure to apply discounts are alleged to be "an unfair practice, deception, fraud, false pretense, false promise or misrepresentation…" consistent with Iowa Code § 714H.3(1). Defendants attack only the intent to deceive elements in Plaintiff's claims for fraud by omission and fraudulent misrepresentation and only the ICFA claim as omissions relate to the "unfair practice" prong allegation.[6]

The Petition satisfies the intent to deceive element in each claim. Plaintiff's fraudulent misrepresentation claim states that "Defendant allowed its advertisements to **intentionally mislead** consumers." Petition at ¶46 (emphasis added). Plaintiff's fraud by omission claim states that "as a direct and proximate result of Defendant's conduct" Plaintiff suffered damages. Petition at ¶ 34. As pled, Plaintiff was "**actually deceived by** Defendant's advertisements." Petition at ¶ 68 (emphasis added). Further, the Petition states that "Defendant allowed its advertisements to intentionally mislead consumers, such as Plaintiff and the members of the Classes." Petition at ¶ 46, *see also* ¶ 26(d) (class definition includes those who "did not receive the discount at the point of sale"), ¶ 21 (noting the common question: whether the "misrepresentations were likely to deceive"). Defendants cannot avoid that they omitted at all times that the price of the items they represented as a certain price were actually a higher price and that, contrary to their promises, there was no "DISCOUNT AUTOMATICALLY GIVEN AT REGISTER." Petition at ¶¶ 32, 9-14 (representations and receipts). Plaintiff's "reliance on Defendants' omissions was both reasonable and detrimental." *Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1077 (N.D. Iowa 2006); Petition at ¶ 34.

---

[6] Plaintiff's ICFA claim on all other grounds is only attacked as to materiality.

Defendants' representations, which they developed and voluntarily posted in their stores, are deceptive, and they made no effort to correct their deception at the point of sale (or any other time) by offering any refund to Plaintiff; Petition at ¶ 46 ("Defendant allowed its advertisements to intentionally mislead"); *see Tuggle v. Wells Fargo, N.A.*, No. 4:20-CV-321-JAJ, 2021 WL 6804071, at *5 (S.D. Iowa Sept. 1, 2021) (not reported) (finding deception was adequately pled because, among other things, defendant allegedly failed to "attempt to refund overpayments to borrowers."); *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 155 (Iowa 1984) (noting that intent is "shown not only when the speaker has actual knowledge of the falsity of his representations but also when he speaks in reckless disregard of whether his representations are true of false."). Here, much like a unilateral contract offer, the Defendants sought to increase sales by offering a discount if multiples of the same items were purchased. Defendants voluntarily placed the signs in their stores.

### C.    Plaintiff's Negligent Misrepresentation Claim is Well Pled.

Plaintiff's negligent misrepresentation claim satisfies the elements on the Restatement (Second) of Torts as adopted by Iowa courts in two ways. First, "The liability of one who is under a public duty to give information extends to loss suffered by any class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them." *Pitts v. Farm Burau Life Ins. Co*, 818 N.W.2d 91, 111 (Iowa 2012) (*quoting* Restatement (Second) of Torts § 552, at 126-27 (1977)). Here, Defendants are under a duty to display the sales price declaring if it is either with or without sales tax. IAC 701-203.1(423). This duty to disclose prices is a fact not present in either *Pitts* (insurance agent giving advice in an agent capacity) and *Huck v. Wyeth, Inc.* 850 N.W.2d 353, 371-72 (Iowa 2014) (plaintiff could not hold a brand name drug manufacturer liable when the plaintiff used a drug by a generic manufacturer).

Second, the same facts distinguishing *Pitts* and *Huck* show why liability attaches here::

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Dinsdale Constr., LLC v. Lumber Specialties, Ltd*., 888 N.W.2d 644, 649–50 (Iowa 2016) (citing Restatement (Second) of Torts § 552, at 126–27 (Am. Law Inst. 1977)). Defendants incorrectly claim that Plaintiff's claim is invalid because it is merely a "seller" of the misrepresented products and nothing more. MTD at pages 10-11. This reasoning is flawed. Defendants voluntarily, intentionally, and knowingly made misrepresentations to induce Plaintiff to purchase the advertised merchandise. Petition at ¶ 45. Defendants are not simply selling a product made by a different company with no involvement. Instead, they voluntarily placed signage at their store locations to entice shoppers. For instance, red and yellow Casey's signage offers cans of FOUR LOKO for 2/$4.00 and specifically advises "AFTER INSTANT REBATE DISCOUNT AUTOMATICALLY GIVEN AT REGISTER." *See* Restatement (Second) of Torts § 552 (person liable for pecuniary loss if he, in the course of his business or other transaction in which he has a pecuniary interest, "**supplies false information for the guidance** of others in their business transactions") (emphasis added); *Id*. at ¶ 8. It was foreseeable that Plaintiff would rely on the information contained in Defendants' signage.

Defendants cannot refute that "under Iowa law, normally only those in the business of supplying information to others owe a duty to ensure that information is correct, accurate, and thorough." *Dinsdale Constr., LLC v. Lumber Specialties, Ltd*., 888 N.W.2d 644, 650 (Iowa 2016) (noting the need to "look at the specific transaction that gives rise to the claim" *Id*. at 651–52.

Defendants' reliance on *Huck* for the proposition that a "seller" cannot be held liable under a claim of negligent misrepresentation is flawed because in *Huck*, it was "undisputed" that plaintiff

"did not use brand defendants' product, but instead used a generic equivalent product that was manufactured and sold by another company" (the competitor of the defendant). Here, Defendants voluntarily undertook a duty to disclose discounts and needed to say enough to not be misleading, unlike in *Pitts* and *Huck* where pricing was not at issue.[7] Moreover, Defendants' immunity argument would lead to the absurd result that a customer walking into a store cannot rely on posted prices when shopping for items and cannot expect discounts to be applied when they present the advertised number of products at the register.

### D.    Plaintiff's Unjust Enrichment Claim is Well Pled.

Defendants argue that Plaintiff's claim for unjust enrichment cannot advance because (1) Plaintiff's fraud allegations are not well pled; and (2) Plaintiff seeks other "adequate legal" remedies which work to foreclose the unjust enrichment claim. MTD at pages 11-12.

However, Plaintiff's allegations demonstrate that (1) Defendants "was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the" Plaintiff; and (3) it was unjust that Defendants retained monies spent by Plaintiff. *AT&T Corp. v. Aventure Commc'n Tech., LLC*, 207 F. Supp. 3d 962, 1022 (S.D. Iowa 2016) (*citing State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154–55 (Iowa 2001) (confirming that unjust enrichment "may arise from contracts, torts, or other predicate wrongs.").

Plaintiff relied on Defendants' misrepresentations and paid more money for products that he believed were a lower price; Defendants then retained benefits, in the form of Plaintiff's payments at the point of sale, unjustly. Petition at ¶¶ 37-42; *see Aventure Commc'n Tech., LLC*, 207 F. Supp. 3d at 1022 (holding that since plaintiff "initially paid Aventure terminating access

---

[7] Note, *Huck* and *Pitts* were on review after summary judgment and a full record was developed. Defendants' reliance on summary judgment cases in its motion to dismiss are inapposite and is like comparing apples and oranges.

fees for services that were not terminating access services within the meaning of the tariff, Aventure would be unjustly enriched to retain that benefit.).

Defendants' attack, that Plaintiff's claim cannot advance because an adequate legal remedy exists, is misguided and merely references Minnesota unjust enrichment law cases. Defendants' cited cases are also further distinguishable. For instance, at MTD at pages 11-12, Defendants heavily rely on *Drobnak v. Andersen Corp.*, 561 F.3d 778, 787 (8th Cir. 2009), where there was no dispute that written warranty governed the transaction and the technical statutory notice requirement had not been met. Here, Defendants do not identify any contract governing the transaction and even challenge that the sales signage has legal significance. In *Cleveland v. Whirlpool Corp.*, 550 F.Supp. 3d 660, 671 (D. Minn. 2021) (citation omitted) there was "no dispute that a written contract governs the at-issue conduct." Similarly, in *Wheeler v. Subaru of America, Inc.*, 451 F.Supp. 3d 1034, 1040 (D. Minn. 2020), a written warranty governed the terms of the transaction and the technical notice requirement had not been met. Defendants' failure to point to any written agreement governing the transaction does not take this case outside the black letter law that Plaintiff can plead in the alternative. Defendants' further assumption that Plaintiff has pleading failures is premature at best.

### E.    The Court Should Deny the Motion to Strike Plaintiff's Class Allegations.

As a threshold matter, Defendants' motion is premature. The time for class certification will be set by the Court.

Although courts have discretion to strike pleadings under Fed. R. Civ. P. 12(f), it is an "extreme and disfavored measure" because the "remedy is drastic and often is sought by the movant simply as a dilatory or harassing tactic." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed.) and *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th

Cir. 2007)). In the class-action context, "[t]he propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977). "[W]here the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." *Id.* Accordingly, class allegations are stricken at the pleadings stage only when it is "apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." *Donelson*, 999 F.3d at 1092 (cleaned up); *see Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007) (class allegations are stricken prior to discovery only "in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").

### 1.    Plaintiff's Proposed Classes Are Not 'Fail-Safe' Classes.

Plaintiff has alleged Iowa and a nationwide classes of persons who were overcharged (i.e., charged regular prices despite advertised discounts) when they purchased Defendants' merchandise. Petition at ¶ 21. These are not 'fail-safe' class definitions. A fail-safe class is where "the class is defined to preclude membership unless a putative member would prevail on the merits." *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). In other words, it is a class in which putative class members "win or, by virtue of losing, [] are not in the class and are not bound" by the judgment. *Id.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)). Here, the proposed classes are not fail-safe—Defendants advertised discounts to everyone, gave the discounts to no one, and therefore every person who purchased 'discounted' merchandise is a putative class member.

Examples of fail-safe class definitions include:

- In the TCPA context, a proposed class including only those persons who did not provide consent to be contacted by the defendant, because the proposed class consisted solely of persons who could establish that the Defendant violated the TCPA. *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 WL 7285905, at *11 (N.D. Iowa Sept. 9, 2021) (note: amendment permitted to cure fail-safe class issue).

- A proposed class including persons or entities who purchased Dell computer products that "Dell falsely advertised," since determining class membership would require the court to reach a legal determination that Dell had falsely advertised. *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (note: amendment permitted to cure fail-safe class issue).

- A proposed class of artwork-framing customers who paid for but did not receive "preservation mounting," because the class was defined to include only those persons entitled to relief. *Oom v. Michaels Companies Inc.*, No. 1:16-CV-257, 2017 WL 3048540, at *5 (W.D. Mich. July 19, 2017). (Defendant argues that *Oom* is analogous to the instant case, but it is not. In *Oom*, some of the framing customers received the preservation mounting and some did not—as discussed below, in this case *none* of the purchasers received Defendant's advertised discounts.)

Plaintiff has plausibly alleged, and expects discovery to show, that Defendants failed to apply the advertised discount for *every purchase* by *every purchaser* of discounted goods. Petition at ¶¶ 8-14, 18. The class definitions encompass *all* persons who paid for merchandise with advertised discounts, because in *all* such instances Defendants failed to honor the discount and charged the customer the regular price. There are no individualized questions regarding liability, because Defendants failed to apply its advertised discounts across the board—none of the persons who purchased discounted merchandise received the discount, and therefore every person who purchased discounted merchandise is a putative class member.

In any event, in the case of 'fail-safe' class definitions, courts routinely grant plaintiffs the opportunity to redefine the class definition by amendment. *Adam v. CHW Grp., Inc.*, No. 21-CV-19-LRR, 2021 WL 7285905, at *11 (N.D. Iowa Sept. 9, 2021) ("[I]n virtually every case that the court has reviewed, at the pre-class certification stage of litigation, when a proposed class is stricken for being determined to be a fail-safe class, the court allows the plaintiff the opportunity

to amend the class definition."). Here, any 'fail-safe' class definition issue, to the extent one exists, can be cured easily by an amendment, either now or at class certification, clarifying that Plaintiff seeks to represent all persons who purchased merchandise with an advertised discount because, upon information and belief, in each such instance the customer did not receive the advertised discount.

> **2.    Defendants Have Not Shown That A Nationwide Class Cannot Be Certified on Plaintiff's Unjust Enrichment, Fraud, and Negligent Misrepresentation Claims.[8]**

Defendants argue that the fifty states' laws on unjust enrichment, fraud, and negligent misrepresentation vary and therefore a nationwide class cannot be certified with respect to those claims. This argument is premature and is nothing more than an attempt to infect this case with red-herrings at the motion to dismiss stage. The conflict-of-laws analysis, for purposes of Rule 23, is typically done at the class certification stage after full briefing and discovery (after which the court is able to conduct a rigorous analysis). At the pleadings stage, courts in the Eighth Circuit routinely deny similar motions to strike nationwide class allegations as premature. *See, e.g., Lizama v. Venus Lab'ys, Inc.*, 679 F. Supp. 3d 848, 872 (E.D. Mo. 2023) ("The Court will defer ruling on [Defendant's argument that Plaintiff cannot satisfy Rule 23's predominance or superiority requirements due to variations in state laws]. The Court finds there is insufficient briefing on both the choice of law issue, as well as the laws of the various states for the five common law claims in the Complaint. Consequently, deciding the issues of predominance and superiority would be premature at this time."); *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1164 (D. Minn. 2023) ("Defendants' argument that the Court should strike portions of the complaint because class

---

[8] Plaintiff acknowledges that its claim under the Iowa Consumer Frauds Act is not amenable to nationwide class treatment.

certification for common-law fraud and negligent misrepresentation are clearly impossible is unavailing. Whether class certification is impossible has not been established at this stage in the proceedings."); *Chen v. Target Corp.*, No. CV 21-1247 (DWF/DTS), 2022 WL 1597417, at \*19 (D. Minn. May 19, 2022) ("Despite the number and nature of Plaintiffs' class allegations, the Court cannot conclude from the pleadings that Plaintiffs' class claims are unmanageable or that a class cannot be certified. Certainly, the Court will be required to engage in a detailed choice of law analysis; however, Defendants' argument is based on a number of assumptions which may or may not be correct. The Court finds that a fully developed factual record is necessary to properly engage in a choice of law analysis and declines to preemptively strike any allegation based on unfounded assumptions of unmanageability."); *In re Folgers Coffee*, No. 21-2984-MD-W-BP, 2021 WL 7004991, at \*4 (W.D. Mo. Dec. 28, 2021) ("[W]hile there are no doubt many differences among these bodies of law, at this juncture, the Court lacks the information necessary to determine with certainty that the certification of a nationwide class is impossible. For one, while Plaintiffs have presented a class definition, they are not bound to it and may present something different in a formal motion. Similarly, Plaintiff may choose to move for class certification on only certain Counts or legal theories, which may shift the balance between common and individual issues. Whether there are common issues that justify class certification is best determined after the Record is fully developed and Plaintiffs have filed a motion setting forth their request in greater detail."); *and Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1351 (E.D. Mo. 2020) ("[T]he Court finds that the decision as to the survival of Plaintiffs' class allegations should be made after allowing Plaintiffs to conduct discovery or on motion to the Court wherein they can provide additional briefing to explain whether the prerequisites of Rule 23 can be satisfied. Given the

severity of striking class allegations at this early stage of the litigation, the Court—out of caution—will decline to strike the nationwide class allegations at this time.").

Here, as in the above cases, the purported yet largely unidentified "idiosyncrasies" between the states' laws is an issue for class certification, are not grounds to strike the nationwide class allegation at the pleadings stage.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss and Strike Class Allegations or, in the alternative, give Plaintiff a right to re-plead. Plaintiff requests oral argument considering the numerous arguments raised in Defendants' motion to dismiss and motion to strike, many of which overlap with the arguments raised in Plaintiff's Motion for Temporary Injunction for which Plaintiff has also requested oral argument. Hearing both motions at the same setting would conserve judicial resources.

Dated:  November 21, 2025

/s/ J. Barton Goplerud
**J. Barton Goplerud, AT0002983**
**Brian O. Marty, AT0011622**
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone:    (515) 223-4567
Facsimile:    (515) 223-8887
Email:  goplerud@sagwlaw.com
marty@sagwlaw.com

CUNEO GILBERT & LaDUCA, LLP
Robert K. Shelquist*
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
(612) 254-7288
rshelquist@cuneolaw.com


CUNEO GILBERT & LaDUCA, LLP
Charles J. LaDuca*
Brendan S. Thompson*
2445 M Street NW, Suite 740
Washington, DC 20037
(202) 789-3960
charlesl@cuneolaw.com
brendant@cuneolaw.com

***ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASSES***

*Pro hac vice forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2025, a true and correct copy of the foregoing was filed electronically to the Clerk of Court via the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ J. Barton Goplerud