IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KIT MASON, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>CASEY'S RETAIL COMPANY, CASEY'S GENERAL STORES, INC., and CASEY'S MARKETING COMPANY,<br><br>*Defendants*. | Case No. 4:25-cv-00361-SMR-SBJ<br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO STAY AND COMPEL ARBITRATION** |

**TABLE OF CONTENTS**

                                                                                    **Page**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 1

   A.    Casey's Terms and Conditions and Plaintiff's Enrollment in Casey's Rewards.............. 1

   B.    The Lawsuit ................................................................................................. 3

III.   ARGUMENT .......................................................................................................... 4

   A.    The Federal Arbitration Act Applies to the Arbitration Provision ................................. 4

   B.    The FAA Mandates that This Court Compel Arbitration ................................................. 6

      1.    A Valid Agreement to Arbitrate Exists Because the Arbitration Provision Is Clear
            and Unambiguous ................................................................................................. 6

      2.    The Arbitration Provision Encompasses Plaintiff's Claims Against Defendants........... 9

   C.    The Court Should Issue a Stay of Proceedings Pending the Required Arbitral
         Proceedings .......................................................................................................... 10

IV.    CONCLUSION ...................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)........................................................................................................5, 6

*Am. Soil Processing, Inc. v. Iowa Comprehensive Pet. Underground Storage Tank*
    *Fund Bd.*,
    586 N.W.2d 325 (Iowa 1998) ...........................................................................................7

*Bank of Am. v. UMB Fin. Servs., Inc.*,
    618 F.3d 906 (8th Cir. 2010) ............................................................................................5

*Brondyke v. Bridgepoint Educ., inc.*,
    985 F. Supp. 2d 1079 (S.D. Iowa 2013) ..........................................................................6

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ..........................................................................................................4

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ............................................................................................................5

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..........................................................................................................5

*Fields v. NCR Corp.*,
    683 F. Supp. 2d 980 (S.D. Iowa 2010) .....................................................................7, 8, 9

*Green Tree Fin. Corp. v. Bazzle*,
    539 U.S. 444 (2003)..........................................................................................................6

*Home Fed. Sav. & Loan Ass'n of Algona v. Campney*,
    357 N.W.2d 613 (Iowa 1984) .......................................................................................7, 9

*Koch v. Compucredit Corp.*,
    543 F.3d 460 (8th Cir. 2008) ............................................................................................6

*Leonard v. Del. N. Cos. Sport Serv.*,
    861 F.3d 727 (8th Cir. 2017) ............................................................................................7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995)............................................................................................................4

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..............................................................................................................5

*Ommen v. Milliman, Inc.*,
    941 N.W.2d 310 (Iowa 2020) ...........................................................................................7

*Perry v. Thomas*,
    482 U.S. 483 (1987) ...............................................................................................4

*Smith v. Spizzirri*,
    601 U.S. 472 (2024) .............................................................................................10

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ..................................................................................................4

*Union Ins. Co. v. Hull & Co.*,
    831 F. Supp. 2d 1060 (S.D. Iowa 2011) ...............................................................5

*United Steelworkers, Local No. 164 v. Titan Tire Corp.*,
    204 F.3d 858 (8th Cir. 2000) ................................................................................6

## Statutes, Rules & Regulations

Federal Arbitration Act, 9 U.S.C. §§ 1–16 ........................................................... *passim*

Iowa Consumer Frauds Act, Iowa Code chapter 714H ...............................................1, 4

## I.    INTRODUCTION

Plaintiff Kit Mason ("Plaintiff") brought this lawsuit against Defendants Casey's Retail Company, Casey's General Stores, Inc., and Casey's Marketing Company (collectively, "Defendants") based on allegations that Defendants failed to apply advertised in-store discounts on merchandise offered at Casey's stores. Plaintiff's claims are for fraud by omission, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, and violation of Iowa Code Chapter 714H, the Iowa Consumer Frauds Act ("ICFA").

Though he failed to disclose it in his pleadings, Defendants have identified Plaintiff as a member of the Casey's Rewards program. As a condition to Plaintiff's enrollment and ongoing participation in the Casey's Rewards program, Plaintiff agreed to Casey's Terms and Conditions, which contain a binding arbitration provision. Plaintiff's claims fall squarely within the terms of the arbitration provision, and therefore also fall squarely within the ambit of the Federal Arbitration Act, 9 U.S.C. §§ 1, 2, 3, and 4 (the "FAA"), U.S. Supreme Court precedent, and Iowa court precedent, each of which mandates arbitration in these circumstances. Therefore, this Court should stay further proceedings in this case under 9 U.S.C. § 3 and compel Plaintiff to arbitrate his claims in accordance with the parties' written agreement to arbitrate any dispute arising out of any dealings Plaintiff had with Defendants.

## II.    FACTUAL BACKGROUND

### A.    Casey's Terms and Conditions and Plaintiff's Enrollment in Casey's Rewards

By participating in the Casey's Rewards program, "members receive certain discounts and accumulate points that can be used to purchase merchandise." (*See* ECF No. 1-1 ¶ 15 ("Pet.").) Participation in Casey's Rewards is voluntary, and customers do not need a Casey's Rewards account in order to purchase goods from a Casey's store. (Declaration of Justin Coaldrake ¶ 3 (Jan. 29, 2026) ("Decl."), attached hereto as Exhibit A.)

In order to sign up for a Casey's Rewards account, a customer must register for an account on the Casey's website or through Casey's mobile app. (Decl. ¶ 4.) The Casey's Rewards enrollment page on Casey's website states, "By creating an account, you acknowledge that you have read our Privacy Policy, and agree to our Terms & Conditions and Casey's Rewards Terms of Use." (Decl. ¶ 5.) The enrollment screen on the Casey's Rewards mobile app states, "By creating an account, you acknowledge that you have read our Privacy Policy, and agree to our Terms & Conditions and you are at least 13." (Decl. ¶ 6.)

The words "Terms & Conditions" on both the website enrollment page and the mobile app enrollment screen include a hyperlink that directs customers to Casey's Terms and Conditions of Use. (Decl. ¶¶ 7, 8, Ex. 1 (Decl. at Ex. 1 hereinafter the "Casey's T&C").) The third paragraph of the preamble to the Casey's T&C contains the following alert:

> **MANDATORY ARBITRATION NOTICE AND CLASS ACTION AND JURY TRIAL WAIVER.**
> These Terms contain a mandatory (binding) arbitration provision and class action and jury trial waiver clauses. Except for certain types of disputes described in the arbitration section below or where prohibited by applicable law, you agree that disputes between you and us regarding your use of the Sites or Services will be resolved by binding, individual arbitration and you waive your right to participate in a class action lawsuit or class-wide arbitration, including as a class representative. The arbitrator's decision will be subject to very limited review by a court. You will be entitled to a fair hearing, but the arbitration procedures are simpler and more limited than rules applicable in Court. For more details, see below.

(Casey's T&C at 1.) The Casey's T&C define "Sites" as Casey's "websites, mobile applications, customer accounts, blogs, social media sites, email, loyalty and mobile advertising programs"; "Services" is defined as "all related content, promotions, programs and services available through the [Sites]"; "you" is defined as "the person accessing the Sites and Services and any persons that allow others to provide information about themselves to us"; and "us" is defined as Casey's General Stores, Inc. and its subsidiary companies." (*Id.*)

The complete arbitration provision is set forth in Paragraph 27 of the Casey's T&C. (Casey's T&C ¶ 27 (hereinafter the "Arbitration Provision").) It provides in part:

> **MANDATORY ARBITRATION AND CLASS ACTION AND JURY TRIAL WAIVER.** Most concerns can be resolved quickly and to your satisfaction if you contact us here. In the event that we are not able to resolve a dispute, and with the exception of the claims for injunctive relief by us as described above and to the extent allowed by law, you hereby agree that either you or we may require any dispute, claim, or cause of action ("**Claim**") between you and us or any third parties arising out of use of the Site, the Services, any other actions with us (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory) to be arbitrated on an individual (non-class) basis.

(Arbitration Provision (emphases in original).) The Arbitration Provision also states that customers may opt out of the Arbitration Provision by contacting Casey's within thirty days of accepting the Casey's T&C. (*Id.*)

Plaintiff enrolled in Casey's Rewards on September 21, 2022 via the Casey's mobile app. (Decl. ¶ 10.) Pursuant to the operative Casey's T&C at the time of Plaintiff's enrollment, the parties agreed that Casey's retained the right to update the Casey's T&C "at any time, for any reason, and in [its] sole discretion." (Decl. ¶ 9, Ex. 2 ¶ 3.) The parties further agreed that it was Plaintiff's "responsibility to periodically review" the Casey's T&C for changes, that any changes would "be effective upon being posted on one or more of the Sites and Services," and that Plaintiff's continued use of the Sites and Services would be deemed acceptance of any changes. (*Id.*) The revised Casey's T&C were effective as of February 19, 2025. (Casey's T&C.) Plaintiff has participated in Casey's Rewards promotions dozens of times since that date, including but not limited to 15 unique purchases with redeemed discounts. (Decl. ¶ 11.) By doing so, he has actively accepted both the benefits he received from the program and the updated Casey's T&C, including the binding Arbitration Provision.

**B.    The Lawsuit**

On August 28, 2025, Plaintiff filed this putative nationwide class action lawsuit in the Iowa

District Court for Polk County. (*See generally* Pet.) Plaintiff alleges that he purchased "certain merchandise" on two occasions from two Casey's stores but did not receive the advertised discount for that merchandise. (*Id.* ¶¶ 8–13.) Instead, Plaintiff asserts that Defendants have a uniform "practice" of failing to apply advertised promotional discounts at the point of sale. (*Id*. ¶¶ 1, 14–18.) Plaintiff's Petition acknowledges the existence of the Casey's Rewards program, (*id.* ¶ 15), but Plaintiff omitted that he is in fact a member of the program.

Plaintiff's claims are for (1) fraud by omission; (2) unjust enrichment; (3) fraudulent misrepresentation; (4) negligent misrepresentation; and (5) violation of Iowa Code chapter 714H, the Iowa Consumer Fraud Act ("ICFA"). (*Id.* at 23–28.) Plaintiff purports to bring these claims on behalf of himself and two putative classes: (1) "[a]ll citizens of the State of Iowa who, from August 28, 2023 to the present, purchased merchandise from one of Defendant's stores in Iowa subject to an advertised discount who did not receive the discount at the point of sale" (the "Iowa Class"); and (2) "[a]ll persons who, from August 28, 2023 to the present, purchased merchandise from one of Defendant's stores subject to an advertised discount who did not receive the discount at the point of sale" (the "Nationwide Class"). (*Id*. ¶ 21.)

## III.    ARGUMENT

### A.    The Federal Arbitration Act Applies to the Arbitration Provision

The United States Supreme Court has held that the FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995); *Perry v. Thomas*, 482 U.S. 483, 489 (1987); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The FAA provides the following:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

contract . . . *shall be valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).

An arbitration agreement falls under the scope of the FAA if: (1) it is written; and (2) it evidences a "transaction involving commerce" where "commerce" means "commerce among the several States . . . ." *Id.* § 1.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues" that are covered by a valid arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). All doubts as to the arbitrability of a claim must be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Union Ins. Co. v. Hull & Co.*, 831 F. Supp. 2d 1060, 1067 (S.D. Iowa 2011) ("The FAA establishes that, as a matter of federal law, any doubts concerning the scope of arbitration should be resolved in favor of arbitration." (quoting *Bank of Am. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010) (cleaned up)). The Arbitration Provision unquestionably falls within the realm of the FAA because it is written and involves interstate commerce.

*First*, there can be no dispute that the Arbitration Provision is written on the Casey's website and is also directly linked in the Casey's mobile app. (Decl. ¶ 7; Casey's T&C.)

*Second*, Plaintiff's purchases at Casey's stores constitute "transaction[s] involving commerce." The United States Supreme Court has broadly interpreted the "transaction involving commerce" provision to encompass any contract "affecting" interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (stating that the FAA "involving commerce" requirement is broad and extends to the full reach of constitutional Commerce Clause power). For example, in *Dobson*, the

Court held that a termite protection plan purchased by an Alabama homeowner from a local franchise office affected interstate commerce and was governed by the FAA. *Dobson*, 513 U.S. at 281. The facts of this case more than meet the standard established by the Supreme Court. "Plaintiff is an individual who at all material times resided in Allerton, Wayne County, Iowa," (Pet. ¶ 2), and Defendants "operate[] a chain of convenience stores . . . with more than 2,500 stores in sixteen states." (*Id.* ¶ 7.) Thus, Plaintiff's claims "involve commerce" because they pertain to the flow of money and goods across state borders.

### B.    The FAA Mandates that This Court Compel Arbitration

Not only does the FAA apply to the Arbitration Provision, but it also mandates that the parties arbitrate Plaintiff's claims. A court asked to compel arbitration under the FAA considers only two questions: (1) whether a valid agreement to arbitrate exists; and (2) whether the arbitration agreement encompasses the issues in dispute. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Koch v. Compucredit Corp.*, 543 F.3d 460, 463 (8th Cir. 2008) (citing *United Steelworkers, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000)). In this case, Plaintiff and Defendants had a valid agreement to arbitrate, and the Arbitration Provision encompasses Plaintiff's claims.

#### 1.    A Valid Agreement to Arbitrate Exists Because the Arbitration Provision Is Clear and Unambiguous

When a court is asked to compel arbitration, it first considers whether a valid agreement to arbitrate exists. Federal courts apply "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter, giving healthy regard for the federal policy favoring arbitration." *Brondyke v. Bridgepoint Educ., inc.*, 985 F. Supp. 2d 1079, 1091 (S.D. Iowa 2013).

Under Iowa law, "[i]f the parties' intent is clear and unambiguous from the words of the contract, [the court] enforce[s] the contract as written." *Am. Soil Processing, Inc. v. Iowa Comprehensive Pet. Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998) (citation omitted). The Arbitration Provision is both clear and unambiguous, as it explicitly encompasses "any dispute, claim, or cause of action . . . between [the customer] and [Casey's] or any third parties arising out of the use of the Site, the Services, or any actions with [Casey's] (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory)." (Arbitration Provision.) The Provision encompasses Plaintiffs' claims in this case because the claims are stated against Defendants and are based on legal theories specifically identified in the Arbitration Provision. *Ommen v. Milliman, Inc.*, 941 N.W.2d 310, 317 (Iowa 2020) ("Where the language of the arbitration provision is broad, a claim will proceed to arbitration if the underlying allegations 'simply touch' matters covered by the provision." (quoting *Leonard v. Del. N. Cos. Sport Serv.*, 861 F.3d 727, 730 (8th Cir. 2017)).

A clear and unambiguous arbitration provision such as the one in this case will be enforced according to its terms except in the rare instance that it is deemed unconscionable. But that is not the case here. "The Iowa Supreme Court has identified five factors to be considered in assessing whether a contract . . . is unconscionable: (1) assent, (2) unfair surprise, (3) notice, (4) disparity of bargaining power, and (5) substantive unfairness." *Fields v. NCR Corp.*, 683 F. Supp. 2d 980, 985 (S.D. Iowa 2010) (citing *Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 618 (Iowa 1984)). Each of these factors reinforce that the Arbitration Provision is in fact enforceable.

*First*, Plaintiff assented to the Arbitration Provision. When Plaintiff enrolled in the Casey's Rewards program, he agreed that Casey's had the right to make changes to the Casey's T&C, that

it was his responsibility to review the Casey's T&C for changes, and that his continued use of the Rewards program would constitute acceptance of any changes. (Decl. at Ex. 2 ¶ 3.) Instead of opting out of the Arbitration Provision or discontinuing his use of the program, Plaintiff continued participating in the Casey's Rewards program following the addition of the Arbitration Provision to the Casey's T&C. (Decl. ¶ 11.) Per the agreed terms of Casey's T&C, this constituted Plaintiff's assent to the Arbitration Provision.

*Second*, there is no element unfair surprise associated with the provision. As stated above, by Plaintiff's agreement to the Casey's T&C, he agreed that it was his responsibility to review the Casey's T&C for changes. (Decl. at Ex. 2 ¶ 3.) The operative Casey's T&C contains multiple highly conspicuous references to the Arbitration Provision, including the preamble to the Casey's T&C, which alerts customers to the Arbitration Provision with text in red, bold, capital typeface, and the paragraphs of the Casey's T&C constituting the Arbitration Provision, which are also set off with bold, capital typeface. (Arbitration Provision.) With these efforts to draw customers' attention to the Arbitration Provision, no customer agreeing to the Casey's T&C can claim to be "surprised," and certainly not "unfairly" so. *See Fields*, 683 F. Supp. 2d at 988 (finding that the plaintiff's surprise was not "unfair" when he received notice of an arbitration provision set off with "large, bold, and underlined typeface").

*Third*, as stated above, Plaintiff agreed to assume the responsibility to review the Casey's T&C and that his continued use of the Rewards Program would constitute his agreement to the current T&C; he continued participating in Casey's Rewards promotions following the addition of the Arbitration Provision to the Casey's T&C. (Decl. ¶ 11); *see also Fields*, 683 F. Supp. 2d at 988.

*Fourth*, under the Casey's T&C, Plaintiff had the power to unilaterally opt out of the arbitration provision but did not do so. (Arbitration Provision.) Even if Plaintiff were to allege

8

disparity of bargaining power between him and Defendants in spite of that fact, the law is clear that this factor "is insufficient, standing alone, to overcome the federal policy favoring arbitration." *Fields*, 683 F. Supp. 2d at 988 (citing *Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 619 (Iowa 1984)).

*Fifth*, the Arbitration Provision is not substantively unfair, because its neutral terms do not favor any one side. The Arbitration Provision allows both the customer and Casey's the right to require arbitration. (Arbitration Provision.) It provides that arbitration will be conducted by the American Arbitration Association ("AAA"), a well-known and well-respected forum, pursuant to AAA's Consumer Arbitration Rules. (*Id.*) And again, the Arbitration Provision contains a mechanism that allowed Plaintiff to opt out of the Arbitration Provision. (*Id.*)

In sum, the Arbitration Provision is clear, ambiguous, and enforceable. Therefore, a valid agreement to arbitrate exists between Plaintiff and Defendants.

### 2. The Arbitration Provision Encompasses Plaintiff's Claims Against Defendants

As set forth above, a valid agreement to arbitrate exists, and it also is clear that the Arbitration Provision applies directly to the claims Plaintiff brings in this lawsuit. Plaintiff's claims relate to his purchase of goods from a Casey's store, *i.e.*, Plaintiff's "action with" Defendants. Therefore, the claims are encompassed within the Arbitration Provision's purview of "any dispute, claim, or cause of action . . . between [customers] and [Defendants] arising out of the use of the Site, the Services, and *any other actions* with [Defendants]." (Arbitration Provision.) Moreover, Plaintiff's claims against Defendants sound in fraud, misrepresentation, tort, and statute, which are explicitly included within the scope of the Arbitration Provision. Simply put, the Arbitration Provision applies to Plaintiff's claims.

The FAA applies to the Arbitration Provision, the Arbitration Provision is a valid agreement to arbitrate, and the Arbitration Provision encompasses Plaintiff's claims against Defendants. Therefore, this Court should compel Plaintiff to bring the present claims in arbitration in accordance with the terms of the Arbitration Provision.

**C.      The Court Should Issue a Stay of Proceedings Pending the Required Arbitral Proceedings**

Section 3 of FAA directs courts to stay litigation that is subject to an arbitration clause between the parties. Section 3 states, in relevant part:

> If any suit or proceeding be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

*See* 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Accordingly, Defendants respectfully request that this Court stay all proceedings before this Court during the pendency of the arbitration.

**IV.      CONCLUSION**

For the reasons stated above, Defendants respectfully request that this Court compel Plaintiff to arbitrate his claims against Defendants and stay all proceedings in this Court during the pendency of the arbitration.

Dated: January 29, 2026                **FAEGRE DRINKER BIDDLE & REATH LLP**

                                                         */s/ Nick Klinefeldt*
                                                         Nicholas A. Klinefeldt, AT0008771
                                                         David Yoshimura, AT0012422

Carolyn A. Gunkel, AT0008944
Emily R. O'Brien, AT0015757
801 Grand Avenue, 33rd Floor
Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
     *david.yoshimura@faegredrinker.com*
     *carolyn.gunkel@faegredrinker.com*
     *emily.obrien@faegredrinker.com*

**ATTORNEYS FOR DEFENDANTS
CASEY'S RETAIL COMPANY, CASEY'S
GENERAL STORES, INC., AND CASEY'S
MARKETING COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2026, a true copy of the foregoing document was served upon all Parties of record through the Court's CM/ECF electronic filing system, with a copy sent via electronic notice to all counsel of record.

/s/ Paulette Ohnemus