IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| **KIT MASON**, individually and on behalf of a class of similarly situated individuals, | Case No. 4:25-cv-00361-SMR-SBJ |
| Plaintiff, | |
| v. | |
| **CASEY'S RETAIL COMPANY, CASEY'S GENERAL STORES, INC., and CASEY'S MARKETING COMPANY**, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY AND COMPEL ARBITRATION**

## TABLE OF CONTENTS

I.    CASEY'S WAIVED ANY RIGHT TO COMPEL ARBITRATION AS A
RESULT OF ITS DELAY AND INCONSISTENT ACTIONS.......................................... 1

    A.    Casey's Was Aware Of The Rewards Programs Provision Since At Least
February 2025. ...................................................................................... 2

    B.    Casey's Inconsistent Actions Amount To Delay. ...................................... 3

        1.    Casey's Has Invoked The Jurisdiction Of This Court Defensively. .............. 3

        2.    Casey's Has Invoked The Jurisdiction Of This Court Offensively. ............... 4

        3.    Casey's Consistent Invocation Of This Court's Jurisdiction
Waives It Right To Compel Arbitration Or Is Barred By The
Doctrines Of Laches Or Estoppel. ......................................................... 5

            a.    Casey's Has Waived Its Arbitration Right Assuming,
Arguendo, That It Ever Had One.......................................... 5

            b.    Arbitration Is Barred By Doctrines Of Laches And Estoppel. ............... 7

            c.    Casey's Late Attempt Here To Arbitrate Is Subject To The
Doctrine Of Laches. .......................................................... 7

            d.    Casey's Late Attempt To Arbitrate Is Subject To The
Doctrine Of Estoppel By Acquiescence. ................................. 8

II.   THE REWARDS PROGRAM DOCUMENT DOES NOT CONSTITUTE
A BINDING AGREEMENT TO ARBITRATE................................................... 9

    A.    Plaintiff Never Agreed To A Contract With An Arbitration Provision................... 9

    B.    The Arbitration Provision Only Applies To Claims Related To
Casey's Rewards Program. .................................................................. 10

    C.    Plaintiff's Tort Claims Are Not Subject To Arbitration
Under Iowa Code § 679A.1. ................................................................. 12

III.  PLAINTIFF DID NOT KNOWINGLY WAIVE HIS "INVIOLATE"
RIGHT TO A TRIAL BY JURY. .................................................................. 13

IV.   CONCLUSION............................................................................................. 16

# TABLE OF AUTHORITIES

## CASES

*Aetna Ins. Co. v. Kennedy ex rel. Bogash*,
    301 U.S. 389 (1937)................................................................................ 14

*Armstrong v. Michaels Stores, Inc.*,
    59 F.4th 1011 (9th Cir. 2023) ................................................................ 4

*Brady v. United States*,
    397 U.S. 742 (1970)......................................................................... 13, 16

*Breadeaux's Pisa, LLC v. Beckman Bros.*,
    83 F.4th 1113 (8th Cir. 2023) ................................................................ 5

*Brookhart v. Janis*,
    384 U.S. 1 (1966).................................................................................. 13

*Cairns v. Grinnell Mut. Reinsurance Co.*,
    398 N.W.2d 821 (Iowa 1987)............................................................... 12

*Crosswhite v. Royal Entertainment Events, LLC.*,
    2026 WL 303534 (E.D. Va. Feb. 4, 2026) ........................................... 5

*Curtis Publi'g v. Butts*,
    388 U.S. 130 (1967)............................................................................. 14

*D.H. Overmyer Co. v. Frick Co.*,
    405 U.S. 174 (1972)............................................................................. 13

*Davidson v. Van Lengen*,
    266 N.W.2d 436 (Iowa 1978)................................................................. 8

*Dimick v. Schiedt*,
    293 U.S. 474 (1935)............................................................................. 13

*Dolan v. Postal Service*,
    546 U.S. 481 (2006).............................................................................11

*Donelson v. Ameriprise Fin. Servs., Inc.*,
    999 F.3d 1080 (8th Cir. 2021) ............................................................... 4

*Duncan v. Int'l Markets Live, Inc.*,
    2022 WL 18584630 (S.D. Iowa Dec. 9, 2022) ...................................... 6

*Est. of Bisignano by & through Huntsman v. Exile Brewing Co., LLC*,
    694 F. Supp. 3d 1088 (S.D. Iowa 2023)................................................. 8

*Faretta v. California,*
    422 U.S. 806 (1975)................................................................................................ 14

*Fuentes v. Shevin,*
    407 U.S. 67 (1972).................................................................................................. 14

*Garrett v. Huster,*
    684 N.W.2d 250 (Iowa 2004)................................................................................... 8

*In re Pawn Am. Consumer Data Breach Litig.,*
    108 F.4th 610 (8th Cir. 2024)............................................................................... 2, 5

*Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.,*
    195 F.3d 368 (8th Cir. 1999).................................................................................. 14

*Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents,*
    471 N.W.2d 859 (Iowa 1991).................................................................................. 12

*Kason Indus., Inc. v. Component Hardware Group, Inc.,*
    120 F.3d 1199 (11th Cir.1997)................................................................................. 7

*Lackie Drug Store, Inc. v. OptumRx, Inc.,*
    143 F.4th 985 (8th Cir. 2025)............................................................................... 5, 6

*Lyster v. Ryan's Family Steak Houses, Inc.,*
    239 F.3d 943 (8th Cir. 2001).................................................................................... 9

*Margeson v. Artis,*
    776 N.W.2d 652 (Iowa 2009)................................................................................... 9

*Markey v. Carney,*
    705 N.W.2d 13 (Iowa 2005)..................................................................................... 8

*Miranda v. Arizona,*
    384 U.S. 436 (1966)................................................................................................ 15

*Morgan v. Sundance, Inc.,*
    596 U.S. 411 (2022)......................................................................................... 2, 3, 6

*N & D Fashions, Inc. v. DHJ Indus., Inc.,*
    548 F.2d 722 (8th Cir. 1976).................................................................................... 7

*Nhan Van Nguyen v. Hobbs,*
    2013 WL 2285861 (W.D. Ark. May 23, 2013) ...................................................... 16

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n,*
    499 U.S. 117, 111 S. Ct. 1156 L. Ed. 2d 95 (1991) ...............................................11

*Northport Health Servs. of Arkansas, LLC v. Posey,*
    930 F.3d 1027 (8th Cir. 2019).................................................................................. 9

iv

*Ohio Bell Telephone Co. v. Public Utilities Commission,*
  301 U.S. 292 (1937).................................................................................. 14

*Parker v. Kearney Sch. Dist.*,
  130 F.4th 649 (8th Cir. 2025)..................................................................... 5

*Quam Const. Co. v. City of Redfield*,
  770 F.3d 706 (8th Cir. 2014)....................................................................... 9

*Rau v. Cavenaugh*,
  500 F. Supp. 204 (D.S.D. 1980)................................................................ 15

*Roederer v. J. Garcia Carrion, S.A.*,
  569 F.3d 855 (8th Cir. 2009)....................................................................... 7

*State ex rel. Holleman v. Stafford*,
  584 N.W.2d 242 (Iowa 1998)...................................................................... 7

*Sutcliffe v. Mercy Clinics, Inc.*,
  856 N.W.2d 382 (Iowa Ct. App. 2014) ...................................................... 12

*Telectronics Pacing Sys., Inc. v. Guidant Corp.*,
  143 F.3d 428 (8th Cir. 1998)....................................................................... 9

*Thomas v. Lockhart*,
  569 F. Supp. 454, 464 (E.D. Ark. 1983) ................................................... 15

*U.S. Bank, Nat'l Ass'n v. Qualizza*,
  2023 WL 3721332 (E.D. Mo. May 30, 2023)............................................ 15

*Vis v. Am. Fam. Life Assur. Co. of Columbus*,
  778 F. Supp. 2d 971 (N.D. Iowa 2011) ..................................................... 12

*Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*,
  537 U.S. 371 (2003).................................................................................... 11

*Wildhawk Invs., LLC v. Brava I.P., LLC*,
  2022 WL 18539509 (S.D. Iowa Feb. 28, 2022)......................................... 4

*Wilkicki v. Brady*,
  882 F. Supp. 1227 (D.R.I. 1995)................................................................ 13

*Wulf v. Thor Motor Coach, Inc.*,
  2024 WL 2213066 (D. Neb. May 16, 2024) .............................................. 14

*Zimmer v. Travelers Ins. Co.*,
  454 F. Supp. 2d 839 (S.D. Iowa 2006)........................................................ 8

**STATUTES**

Federal Arbitration Act ................................................................................................ 1

Iowa Code § 679A.1(2).......................................................................................... 12, 13

**OTHER AUTHORITIES**

28 Am. Jur. 2d Estoppel and Waiver § 63 (2000) ........................................................ 8

Ala. Const. art. I, § 11 ................................................................................................. 13

Ark. Const. art. 2, § 7 ................................................................................................. 13

Fla. Const. art. I, § 22 ................................................................................................. 13

Ill. Const. art. I, § 13 .................................................................................................. 13

Ind. Const. art. I, § 20 ................................................................................................ 13

Iowa Const. art. I, § 9 ................................................................................................. 13

K.S.A. 60-238 ............................................................................................................. 13

Ky. Const. § 7 ............................................................................................................. 13

MINN. CONST. art. I, § 4 ........................................................................................... 13

Mo. Const. art. I, § 22(a)............................................................................................. 13

N.D. Const. art. I, § 13 ............................................................................................... 13

Neb. Const. art. I, sec. 6 ............................................................................................. 13

Ohio Const. art. I, § 5................................................................................................. 13

Okla. Const. art. II, § 19............................................................................................. 13

S.D. Const. art. VI, § 6 ............................................................................................... 13

Tenn. Const. art. I, § 6 ............................................................................................... 13

Tex. Const. art. 1, § 15 ............................................................................................... 13

Wis. Const. art. I, § 5 ................................................................................................. 13

Casey's uninterrupted pattern of invoking this Court's jurisdiction both filing and defending substantive litigation motion practice squarely precludes its motion to compel arbitration pursuant to the doctrines of waiver, laches, or estoppel. Following removal to this Court, Casey's has filed several overlength briefs defending a motion for temporary restraining order, and offensively seeking dismissal on the pleadings and striking class allegations, apparently hoping that this Court would rule quickly in its favor. Now, while this Court is deliberating those fully briefed motions and six months into the litigation, Casey's changes course and decides that the cash purchases at issue in this case are subject to a supposed arbitration provision buried in the terms and conditions of a rewards program document (the "Rewards Program") which Casey's claims governs cash purchases. Even the terms of the Rewards Program limit the purchases to which it applies. Even assuming *arguendo* that Plaintiff is bound by the Rewards Program terms and conditions, Plaintiff's waiver of his right to a trial by jury was not knowing and intelligent—Plaintiff is guaranteed an "inviolate" right to a trial by jury in the Iowa Constitution, the heightened nature of the right which is never mentioned in the Terms and Conditions .

I.    **CASEY'S WAIVED ANY RIGHT TO COMPEL ARBITRATION AS A RESULT OF ITS DELAY AND INCONSISTENT ACTIONS.**

Casey's Motion includes several pages of basic horn-book information concerning the Federal Arbitration Act ("FAA") along with a handful of meritless arguments claiming its arbitration agreement, which applies to only Rewards Program purchases, falls "within the realm of the FAA." DE 28-1, Brief, pp. 3-6.

The Court should not even reach the merits of Casey's arguments because it has already waived and relinquished any right to arbitrate here. Casey's has been substantively engaging in this litigation without raising-the-specter of arbitration until now—approximately six months after

1

the case was initiated—and notwithstanding that it has known that it could have sought arbitration but has, until now, acted inconsistently with the Rewards Program's terms and conditions.[1]

As set forth in *Morgan v. Sundance, Inc*., 596 U.S. 411, 417 (2022), waiver "is the intentional relinquishment or abandonment of a known right." Waiver exists where a party (1) was aware that it had an agreement, and (2) acted "inconsistently" with that agreement. *In re Pawn Am. Consumer Data Breach Litig*., 108 F.4th 610, 613 (8th Cir. 2024). The inquiry focuses on the "right-holder's conduct." *Id*. (citing *Morgan*, 596 U.S. at 419).

### A. Casey's Was Aware Of The Rewards Programs Provision Since At Least February 2025.

According to the Declaration of Casey's Justin Coaldrake, the Rewards Program terms and conditions containing the arbitration provision have been in effect since February 2025. *See* DE 28-3 (attaching Terms and Conditions of Use, dated February 19, 2025). The Petition initiating this case, which was filed in August 2025, alleges that "Defendant offers a rewards program, called 'Casey's Rewards,' where members receive certain discounts and accumulate points that can be used to purchase merchandise." DE 1-1, ¶ 15. Casey's cannot deny that, by way of its own admission and/or as alleged in Petition, it was aware that the terms and conditions of its Rewards Program contain an arbitration paragraph; nor can Casey's refute that it never mentioned, referenced or brought to Plaintiff's or the Court's attention that it was aware of the Rewards Program's arbitration paragraph until the filing of the pending motion.[2]

---

[1] As described herein, the Rewards Program arbitration paragraph is not valid or controlling for other reasons as well.

[2] Casey's motion never states when it started looking for any purported agreement with Plaintiff, any difficulties it encountered in finding the purported agreement, or even any steps it took to locate a purported agreement. Instead, it offers an excuse of sorts that the Plaintiff should have pled that he was a rewards member despite having sued in his name and screen shotting every single receipt supporting the cash purchases at issue in the Petition.

**B.**    **Casey's Inconsistent Actions Amount To Delay.**

None of Casey's filings prior to this motion discuss or even hint at arbitration. Instead, and ironically, Casey's has consistently advocated for remedies that are inconsistent with arbitration. *Morgan*, 596 U.S. at 415 (discussing waiver when a party "changed course."). For six months Casey's has sought a litigation forum advantage by first removing the case from state court to federal court and filing and defending motions hoping for Court rulings. When no quick rulings issued Casey's belatedly argues now that the dispute should be heard by no court at all.

**1.**    **Casey's Has Invoked The Jurisdiction Of This Court Defensively.**

After being served with the Petition in August 2025, Casey's filed a notice of removal requesting that the case "be removed from the Iowa District Court for Polk County to the United States District Court for the Southern District of Iowa, and that this Court assume full jurisdiction over this action, to the exclusion of any further proceedings in the state court." DE 1, p. 7. In its response to Plaintiff's motion for preliminary injunction, Casey's never once suggested that this Court did not have jurisdiction to hear the motion or that the litigation should be stayed. Instead, Casey's defensively invoked this Court's jurisdiction to deny the injunctive motion and further invoked jurisdiction noting it "reserves the right to propose an appropriate bond amount once the terms of the injunction are disclosed." DE 7. In the joint motion establishing deadlines for initial motion practice, the parties explained to the Court that they "met and conferred regarding their respective expected plans for initial motions practice." DE 5 (illustrating that Casey's had no intention to file a motion to compel arbitration). Next, in its resistance to Plaintiff's request for oral argument, Casey's never raised arbitration and instead stated that oral argument was not needed to decide the motion and merely reiterated that a bond is necessary. DE 17.

### 2.    Casey's Has Invoked The Jurisdiction Of This Court Offensively.

Casey's offensively invoked this Court's jurisdiction by filing a substantive motion to dismiss the case on the pleadings and to strike the class allegations with prejudice. Both motions should not have been filed, much less decided by this Court, if Casey's believed that this Court was divested of jurisdiction. In its Conclusion section of the motion to dismiss and strike class allegations, Casey's sought an end to the litigation rather than arbitration: "For the reasons stated herein, **Defendants respectfully request that the Court dismiss Plaintiff's Petition in its entirety**. If any claims survive dismissal, **the Court should strike the remaining class allegations** in their entirety or, alternatively, strike the national class allegations." DE 16 (emphasis added); DE 27.

"A party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right. . . . Requesting that a court dispose of a case on the merits before reaching arbitration is inconsistent with resolving the case through arbitration and also counts as substantially invoking the litigation machinery." *Wildhawk Invs., LLC v. Brava I.P., LLC*, No. 3:20-CV-109-JAJ-SBJ, 2022 WL 18539509, at *3 (S.D. Iowa Feb. 28, 2022) (*quoting Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087–88 (8th Cir. 2021) (cleaned up)); *see Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) ("Obviously, seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.").

Further amplifying the inconsistent nature of Casey's offensive invocation of this Court's jurisdiction is that while the purported agreement states "you waive your right to participate in a class action lawsuit" Casey's doesn't seek a stay but, rather, seeks a ruling that the "Court should strike all of Plaintiff's class allegations." DE 28-3 (Terms and Conditions of Use, dated February 19, 2025); DE 16, pp. 12-22.

4

**3.     Casey's Consistent Invocation Of This Court's Jurisdiction Waives It Right To Compel Arbitration Or Is Barred By The Doctrines Of Laches Or Estoppel.**

**a.     Casey's Has Waived Its Arbitration Right Assuming, Arguendo, That It Ever Had One.**

Eighth Circuit jurisprudence holds arbitration has been waived when, as here, a party delays filing a motion to arbitrate or otherwise acts inconsistently with an arbitration right by invoking the court's jurisdiction to make substantive rulings. For example, in *Lackie Drug Store, Inc. v. OptumRx, Inc.*, a class action brought against pharmacy benefit managers, the court determined that defendant waived its right to arbitrate because it did not timely act on the knowledge it possessed (i.e., it did not share that it was aware that had an arbitration agreement) and acted inconsistently by litigating. 143 F.4th 985, 993, 994, 997 (8th Cir. 2025) (citing *Parker v. Kearney Sch. Dist.*, 130 F.4th 649, 654 (8th Cir. 2025) (finding that the defendant waived its right to compel arbitration by seeking a decision on the merits of Plaintiffs' claims without doing anything to preserve its right to arbitrate—"we are left with the conclusion that [the defendant] merely wanted to see how the case was going in federal court before deciding whether it would be better off there or in arbitration.") and *In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th at 613-614) (Finding that defendant "acted inconsistently with" it rights and "first sought arbitration almost two years after moving to dismiss" the claims. "**It is too late to change their position now . . . They all but admit to having knowledge of their contractual right to arbitrate long before they formally raised it**.")(emphasis added)); *see also Breadeaux's Pisa, LLC v. Beckman Bros.*, 83 F.4th 1113, 1117-18 (8th Cir. 2023) (affirming that request to compel arbitration was not timely because defendant "acted inconsistently with its right" and "did not seek to arbitrate its remaining claims for equitable relief when the district court declined to enter a preliminary injunction."); *Crosswhite v. Royal Entertainment Events, LLC.,* No. 3:25-CV-308, 2026 WL

303534, at *3 (E.D. Va. Feb. 4, 2026) (finding waiver where defendant sought a ruling on its motion to dismiss which was "utterly inconsistent" with defendant's "rights to compel arbitration."); *Duncan v. Int'l Markets Live, Inc.*, No. 4:20-CV-00017-RGE-HCA, 2022 WL 18584630, at *10 (S.D. Iowa Dec. 9, 2022) (finding that defendant waived its right to arbitration when it "filed a response to [plaintiff's] motion to dismiss [in which it] was again silent about arbitration" and "waited six months to mention its right to arbitrate").

Requesting arbitration at this late juncture contradicts Casey's previous litigation posture seeking this Court's jurisdiction to make substantive rulings and granting final relief. Casey's arbitration gambit, having waited months for this Court to rule in its favor, is disingenuous, prejudicial, and should be deemed waived. For six months, Casey's has never raised arbitration and instead sought finality of this case from this Court in its entirety on other grounds (which are equally deficient). *See* DE 16 (motion to dismiss Conclusion revealing Casey's sole objective before it changed course and sought arbitration).

"To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." *Morgan*, 596 U.S. at 417. Casey's "failed to compel arbitration in a timely manner and substantially invoked the litigation machinery, thereby waiving their contractual right to arbitrate." *Duncan*, 2022 WL 18584630, at *1; *Morgan*, 596 U.S. at 417 (finding waiver where a party abandons a contended right). Moreover, at no time has Plaintiff here brought new claims or theories here (i.e., Plaintiff has not amended the Petition) which could possibly provide Casey's with an opportunity to seek arbitration at this late stage. *Lackie Drug Store, Inc.*, 143 F.4th *Id.* at 994 (noting that a "revival of the right to seek arbitration" is not warranted where no new theories are offered).

b.    **Arbitration Is Barred By Doctrines Of Laches And Estoppel.**

Waiver may also "be used in the sense of 'laches' or 'estoppel,'" and bars arbitration when the delay in seeking arbitration would be inequitable to one party. *N & D Fashions, Inc. v. DHJ Indus., Inc*., 548 F.2d 722, 728 (8th Cir. 1976) (citations omitted).

c.    **Casey's Late Attempt Here To Arbitrate Is Subject To The Doctrine Of Laches.**

A party asserting laches must show: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Roederer v. J. Garcia Carrion, S.A*., 569 F.3d 855, 859 (8th Cir. 2009) (quoting *Kason Indus., Inc. v. Component Hardware Group, Inc*., 120 F.3d 1199, 1203 (11th Cir.1997)); *State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 245 (Iowa 1998) (citations omitted) (explaining that laches is "premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another").

Casey's has delayed seeking arbitration and has been habitually inconsistent with its filings since the start of this case (i.e., has requested an end this litigation "in its entirety" and asked the Court's to strike class allegations yet now requests arbitration which essentially requests the same relief (using the same evidence, facts and parties)). DE 16; DE 28-4. For approximately six months, since the filing of the Petition, Plaintiff has spent money and resources litigating this case, even though Casey's was aware of its Rewards Program's potential arbitration argument since at least February 2025. Casey's waited until now to move to compel arbitration . DE 28-3 (agreement showing date of 2025).

Casey's dilatory tactics should not be countenanced by this Court. Casey's seeks final judgments in two distinct forums (this Article III Court and by virtue of this motion in an arbitration venue) related to similar and or overlapping issues concerning its deceptive conduct. When it

removed this action and moved to dismiss and strike Plaintiff's class allegations, Casey's sought to litigate its actions in this Court. DE 1, 16, 7 (even when faced with Plaintiff's preliminary injunction motion Casey's never raised arbitration (or any other possible available remedy)). To now attempt to abandon and jettison this offensive litigation posture and its additional litigation defensive posture, and un-ring the bell it has rung, is prejudicial to Plaintiff. And there is nothing "speculative" about Plaintiff's injuries nor are there any "hypothetical preconditions" existing here which could excuse Casey's conduct. *Compare Zimmer v. Travelers Ins. Co.*, 454 F. Supp. 2d 839, 860 (S.D. Iowa 2006) (in laches analysis, finding no prejudice "demonstrated by injury").

### d.    Casey's Late Attempt To Arbitrate Is Subject To The Doctrine Of Estoppel By Acquiescence.

"Estoppel by acquiescence occurs when a person knows or ought to know of an entitlement to enforce a right and neglects to do so for such time as would imply an intention to waive or abandon the right." *Markey v. Carney*, 705 N.W.2d 13, 21 (Iowa 2005) (quoting *Garrett v. Huster*, 684 N.W.2d 250, 255 (Iowa 2004)).  It applies when "(1) a party has full knowledge of his rights and the material facts; (2) remains inactive for a considerable time; and (3) acts in a manner that leads the other party to believe the act now complained of has been approved." *Id.* (quoting 28 Am. Jur. 2d Estoppel and Waiver § 63, at 489–90 (2000)) (cleaned up).  It "does not require a showing of detrimental reliance or prejudice." *Id.; see Est. of Bisignano by & through Huntsman v. Exile Brewing Co., LLC*, 694 F. Supp. 3d 1088, 1124 (S.D. Iowa 2023) (quoting *Davidson v. Van Lengen*, 266 N.W.2d 436, 439 (Iowa 1978)) ("Estoppel by acquiescence examines the individual's actions who holds the right in order to determine whether that right has been waived.").

As explained above, Casey's has known that a potential arbitration argument exists by virtue of a paragraph in its Rewards Program since at least February 2025, yet  inexplicably delayed in providing that information to Plaintiff and the Court. DE 28-3. Casey's  inconsistent

actions of removing this case to this Court and filing a motion to dismiss this case in its entirety (DE 16) and then switching course and moving to compel arbitration after actively engaging in this litigation for sixth months, have prejudiced Plaintiff.

## II.  THE REWARDS PROGRAM DOCUMENT DOES NOT CONSTITUTE A BINDING AGREEMENT TO ARBITRATE.

### A.  Plaintiff Never Agreed To A Contract With An Arbitration Provision.

"[A] matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)). "State contract law governs whether an arbitration agreement is valid." *Quam Const. Co. v. City of Redfield*, 770 F.3d 706, 708 (8th Cir. 2014) (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 946 (8th Cir. 2001)). In Iowa, and most everywhere else, "[i]t is fundamental that a valid contract must consist of an offer, acceptance, and consideration." *Margeson v. Artis*, 776 N.W.2d 652, 655 (Iowa 2009). Here, there is no evidence that Plaintiff agreed to Casey's updated, February 19, 2025 T&C—the only T&C containing an arbitration provision.

Casey's December 2, 2019 Terms and Conditions do not contain an arbitration provision. *See generally* DE 28-4. Therefore, to compel Plaintiff to arbitrate his claims, the Court must find that he agreed to Casey's updated, February 19, 2025 Terms and Conditions. There is no evidence in the record that he did.

Casey's December 2, 2019 Rewards Program states:

> Casey's reserves the right, at its discretion, to change, delete, and update this Agreement and any other policies that govern or relate to the Sites and Services, at any time, for any reason, and in Casey's sole discretion. . . . Your access and/or use of any of the Sites and Services after terms of this Agreement are amended or updated shall be deemed acceptance of all such changes.

9

DE 28-4, p. 2-3.

According to Casey's, Plaintiff "enrolled in Casey's Rewards on September 21, 2022 via the Casey's mobile app" and "has participated in Casey's rewards promotions dozens of times since that date, including but not limited to 15 unique purchases with redeemed discounts." DE 28-2, Coaldrake Dec. ¶¶ 10-11. There is no evidence in the record, however, that Plaintiff "participated in Casey's rewards promotions" *after February 19, 2025*, and therefore there is no evidence that he accepted or consented to the updated Terms and Conditions containing the arbitration provision.

### B.    The Arbitration Provision Only Applies To Claims Related To Casey's Rewards Program.

Any arbitration provision here only applies to claims related to the Casey's Rewards program, not to all claims generally.

The language provides:

> In the event that we are not able to resolve a dispute, . . . you hereby agree that either you or we may require any dispute, claim, or cause of action ("Claim") between you and us or any third parties arising out of the use of the Site, the Services, **and** any other actions with us (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory) to be arbitrated on an individual (non-class) basis.

DE 28-3, p. 12 (emphasis added). "Sites" is defined as "access to and use of [Casey's] websites, mobile applications, customer accounts, blogs, social media sites, email, loyalty and mobile advertising programs," and "Services" is defined as "all related content, promotions, programs and services available through the [Sites]." *Id.* p. 2.

Casey's reading of the language—that it applies to *all* claims, whether related to the Casey's Rewards program or not—substitutes the word "or" for the word "and" in bold, above. The Court should decline Casey's invitation to judicially rewrite its arbitration provision to ensnare Plaintiff's claims.

"Under the principle of *ejusdem generis,* when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129, 111 S. Ct. 1156, 1163, 113 L. Ed. 2d 95 (1991). Here, per *ejusdem generis*, the general phrase "and any other actions with us" applies only to claims involving the "Sites" and "Services." *See Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) (in the phrase "execution, levy, attachment, garnishment, or other legal process," the clause "other legal process" to is limited to legal processes of the same nature as the specific items listed); *Dolan v. Postal Service*, 546 U.S. 481, 486-87 (2006) (in FTCA claim arising out of the "loss, miscarriage, or negligent transmission of letters or postal matter," the phrase "negligent transmission" is similarly limited to the failure to timely deliver mail to the right address).

Notably, if Casey's intended the arbitration provision to encompass *all* claims of any type, it could have easily done that without first specifically listing claims related to the "Sites" and "Services." Casey's preferred reading of the arbitration provision renders the specific reference to "Sites" and "Services" claims completely superfluous.

The fact that the arbitration language is limited to claims involving the Casey's Rewards program is further buttressed by the "preamble" on the first page of the February 19, 2025 T&C. The preamble states:

> These Terms contain a mandatory (binding) arbitration provision and class action and jury trial waiver clauses. Except for certain types of disputes described in the arbitration section below or where prohibited by applicable law, you agree that disputes between you and us *regarding your use of the Sites or Services* will be resolved by binding, individual arbitration and you waive your right to participate in a class-action lawsuit or class-wide arbitration, including as a class representative.

DE 28-3, p. 2 (emphasis added). Notably, the preamble omits any reference to "all claims," and instead plainly states that the arbitration agreement only applies to claims relating to the Sites and Services. *See Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987) (ambiguities in adhesion contracts construed against the drafter); *Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862–63 (Iowa 1991) (internal citation omitted) (citing cases) ("When a contract is not ambiguous, it will be enforced as written, but when there are ambiguities in a contract, they are strictly construed against the drafter."). Casey's itself, in the preamble, interpreted the arbitration provision as only applying to claims involving the Sites or Services. For the above reasons, this Court should do the same.

Plaintiff's claims are not related to the Casey's Rewards program. There is no evidence Plaintiff used his Casey's Rewards in connection with the subject purchases, *see* DE 1-1, Petition, ¶¶ 8-13, and nothing in Casey's advertising materials required membership in the Casey's Rewards program to obtain the promised discounts, *see id.*, ¶¶ 15-16. Thus, Plaintiff's claims are not encompassed by the Reward Program.

### C.    Plaintiff's Tort Claims Are Not Subject To Arbitration Under Iowa Code § 679A.1.

Iowa Code § 679A.1(2)[3] states:

> A provision in a written contract to submit to arbitration a future controversy arising between the parties is valid, enforceable, and irrevocable unless grounds exist at law or in equity for the revocation of the contract. This subsection shall not apply to any of the following: . . . (c) Unless otherwise provided in a separate writing executed by all parties to the contract, any claim sounding in tort whether or not involving a breach of contract.

---

[3] Courts have held that Iowa Code § 679A.1(2)(a), which applies to adhesion contracts, and (2)(b), which applies to employment contracts, are preempted by the FAA. *Vis v. Am. Fam. Life Assur. Co. of Columbus*, 778 F. Supp. 2d 971 (N.D. Iowa 2011); *Sutcliffe v. Mercy Clinics, Inc.*, 856 N.W.2d 382 (Iowa Ct. App. 2014). These subsections are not at issue here.

Plaintiff's tort-based fraud by omission, fraudulent misrepresentation, and negligent misrepresentation claims are not subject to arbitration under Iowa Code § 679A.1(2)(c).

## III. PLAINTIFF DID NOT KNOWINGLY WAIVE HIS "INVIOLATE" RIGHT TO A TRIAL BY JURY.

Plaintiff's right to a trial by jury is protected by Article I, Section 9 of the Iowa Constitution which provides that "[t]he right of trial by jury shall remain **inviolate**. . . ."  Iowa Const. art. I, § 9 (emphasis added).[4] Here, Casey's purported arbitration agreement doesn't even use the word "inviolate" much less notify Plaintiff that the right being waived is the inviolate right to a jury trial.

A party may waive its constitutional rights, but only if that waiver is knowing and intentional. *Brookhart v. Janis*, 384 U.S. 1, 4-5 (1966). The Supreme Court has cautioned: "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt,* 293 U.S. 474, 486, (1935). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970).

The "'voluntary, knowing, and intelligent' standard has been applied by the Supreme Court to the evaluation of a waiver of constitutional rights in civil cases." *Wilkicki v. Brady,* 882 F. Supp. 1227, 1231 (D.R.I. 1995) (citing cases); *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185 (1972) (assuming, without deciding, that the standard for waiver of due process rights

---

[4] The heightened protection in the Iowa Constitution is not a surprise to Casey's as 18 of the 19 states in which Casey's does business also describe the state constitutional right to a jury trial as "inviolate," with the only exception being Michigan. *See* N.D. Const. art. I, § 13; S.D. Const. art. VI, § 6; Neb. Const. art. I, sec. 6; K.S.A. 60-238; Okla. Const. art. II, § 19; Tex. Const. art. 1, § 15; MINN. CONST. art. I, § 4; Iowa Const. art. I, § 9; Mo. Const. art. I, § 22(a); Ark. Const. art. 2, § 7; Wis. Const. art. I, § 5; Ill. Const. art. I, § 13; Ind. Const. art. I, § 20; Ohio Const. art. I, § 5; Ky. Const. § 7; Tenn. Const. art. I, § 6; Ala. Const. art. I, § 11; Fla. Const. art. I, § 22.

in civil context is the "voluntary, knowing, and intelligent" standard which governs waiver in criminal context); *Fuentes v. Shevin,* 407 U.S. 67, 95 (1972) ("a waiver of constitutional rights in any context must, at the very least, be clear."); *Ohio Bell Telephone Co. v. Public Utilities Commission,* 301 U.S. 292, 307 1093 (1937) (in a civil case, "we do not presume acquiescence in the loss of fundamental rights."); *Faretta v. California,* 422 U.S. 806, 835 (1975) (right to counsel); *Curtis Publ'g v. Butts,* 388 U.S. 130, 145 (1967) (First Amendment rights).

So too as announced by the Eight Circuit and courts sitting in the Eighth Circuit:

> Because the right to a jury trial is fundamental, the Court indulges every reasonable presumption against its waiver. Courts in the Eighth Circuit apply a "knowing and voluntary" standard in determining whether a party has waived a jury trial. Although there is a split among the circuits regarding the burden of proof, courts within the Eighth Circuit have routinely held that the party attempting to enforce the waiver bears the burden of proving it is knowing and voluntary.

*Wulf v. Thor Motor Coach, Inc.,* No. 8:23CV347, 2024 WL 2213066, at *2 (D. Neb. May 16, 2024), *objections overruled,* No. 8:23CV347, 2024 WL 3726388 (D. Neb. Aug. 5, 2024) (internal citations and quotation marks omitted); *see also Indiana Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co.*, 195 F.3d 368, 374 (8th Cir. 1999) ("[B]ecause the right to a jury trial is fundamental, courts must indulge every reasonable presumption against waiver."); *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937) ("[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.").

> The factors a court looks to in assessing whether a waiver was knowing and voluntary include whether the waiver is in a standardized contract, the size of the print of the waiver provision and whether it is in its own paragraph, the location of the waiver provision in the contract, the length of the contract, whether the parties negotiated the contractual terms, whether the waiving party was sophisticated or had counsel, whether there was unequal bargaining power, and whether there was an opportunity to review the terms of the contract.

*Wulf*, 2024 WL 2213066, at *3.

14

Here, Plaintiff did not knowingly and intelligently agree to the arbitration provision, which amounts to a waiver of the "inviolate" right to a trial by jury, because the text of the Rewards Program's arbitration provision did not ever use the word "inviolate." That glaring language failure makes this an easy case as even the *ipsi dixit* of Casey's contract doesn't demonstrate an adequate description of the waived right from which a knowing, voluntary, and intelligent waiver would flow. *See, e.g., U.S. Bank, Nat'l Ass'n v. Qualizza*, No. 4:21-CV-120-MTS, 2023 WL 3721332, at *2 (E.D. Mo. May 30, 2023) (defendant failed to meet burden of showing knowing and voluntary waivers where only evidence presented was the contractual provisions themselves). The requirement of an adequate description of the Constitutional right being waived is fundamental and, as applied here, Plaintiff could not have knowingly and intelligently agreed to a waiver of jury trial without being advised that the right is "inviolate." *See e.g., Thomas v. Lockhart*, 569 F. Supp. 454, 464 (E.D. Ark. 1983), *aff'd*, 738 F.2d 304 (8th Cir. 1984) ("The prejudice accruing to petitioner is, indeed, the deprivation of the opportunity to be knowledgeable of the relevant facts, circumstances and law pertaining to his case which precluded him from entering a plea to the charge pending against him knowingly, voluntarily and intelligently."); *Rau v. Cavenaugh*, 500 F. Supp. 204, 207 (D.S.D. 1980) ("The Plaintiff did read the mortgage. However, her comprehension fell far short of the level required for a knowing waiver of constitutional rights. . . . This Court cannot equate Plaintiff's understanding of the need to make mortgage payments with the giving of a valid and knowing waiver of her constitutional rights of due process."); *Miranda v. Arizona*, 384 U.S. 436, 492 (1966) ("Miranda was not in any way apprised of his right to consult with an attorney and to have one present during the interrogation, nor was his right not to be compelled to incriminate himself effectively protected in any other manner. Without these warnings the statements were inadmissible. The mere fact that he signed a statement which contained a typed-

in clause stating that he had 'full knowledge' of his 'legal rights' does not approach the knowing and intelligent waiver required to relinquish constitutional rights."); *Brady v. United States*, 397 U.S. 742, 748(1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."); *Nhan Van Nguyen v. Hobbs*, No. 2:13-CV-02035, 2013 WL 2285861, at *4 (W.D. Ark. May 23, 2013) ("To be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent, and because a guilty plea constitutes a waiver of various constitutional rights, it must be made with sufficient awareness of relevant circumstances and likely consequences.").

An adequate description of the right being waived is fundamental to Constitutional law and does not single our or disadvantage arbitration. Casey's inadequate description of the "inviolate" nature of the state constitutional right here results in the waiver not being intelligent and knowing and bars arbitration.

## IV.   CONCLUSION

For the reasons set forth herein, Casey's motion to compel should be denied.

Dated: February 19, 2026

CUNEO GILBERT FLANNERY & LaDUCA, LLP

By:  s/  Robert K. Shelquist
Robert K. Shelquist, *Pro Hac Vice*
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Telephone:    (612) 254-7288
rshelquist@cuneolaw.com

SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
J. Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Telephone:    (515) 223-4567
Facsimile:    (515) 223-8887
goplerud@sagwlaw.com
marty@sagwlaw.com

CUNEO GILBERT FLANNERY & LaDUCA, LLP
Charles J. LaDuca*
Brendan S. Thompson*
2445 M Street NW, Suite 740
Washington, DC 20037
(202) 789-3960
charlesl@cuneolaw.com
brendant@cuneolaw.com

***ATTORNEYS FOR PLAINTIFF AND THE
PROPOSED CLASSES***

*Pro hac vice forthcoming