IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KIT MASON, individually and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff*,<br><br>v.<br><br>CASEY'S RETAIL COMPANY, CASEY'S GENERAL STORES, INC., and CASEY'S MARKETING COMPANY,<br><br>*Defendants*. | Case No. 4:25-cv-00361-SMR-SBJ<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY AND COMPEL ARBITRATION** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 1

    A.  Defendants Have Properly Invoked and Have Not Waived Their Right to Enforce the Binding Arbitration Provision ................................................................................. 1

        1.  Defendants' Motion Properly Precedes Substantial Movement of the "Litigation Machinery" ................................................................................................................ 2

        2.  The Doctrines of Laches and Estoppel Do Not Bar Defendants' Right to Enforce the Binding Arbitration Provision ............................................................................. 5

    B.  The Arbitration Provision Is Binding and Enforceable ................................................. 6

        1.  Plaintiff Accepted the Terms and Conditions, Which Included the Binding Arbitration Provision ................................................................................................. 6

        2.  The Arbitration Provision Encompasses Disputes Regarding the Transactions Plaintiff Described in the Petition ............................................................................. 7

        3.  The Iowa Arbitration Act Does Not Govern the Enforceability of the Arbitration Provision .................................................................................................................... 9

        4.  Plaintiff's Argument That No Arbitration Provision Can Be Enforced Absent the Inclusion of the Word "Inviolate" Is Contrary to the Law ....................................... 9

III.  CONCLUSION ..................................................................................................................11

**I.     INTRODUCTION**

The parties have agreed to submit this dispute to binding arbitration. Plaintiff's Opposition to Defendants' Motion to Stay and Compel Arbitration Motion (ECF No. 31 (hereinafter "Opp.")) identifies no colorable basis to deny the enforcement of that agreement. (ECF No. 28-3 ¶ 27 (hereinafter the "Arbitration Provision").) Instead, Plaintiff wrongly argues that the Court should deem Defendants to have waived their right to arbitrate despite their good-faith and timely invocation of the Arbitration Provision. And he cites to irrelevant criminal cases, inapplicable canons of statutory interpretation, and an expressly preempted state court statute to argue that the Arbitration Provision should be deemed unenforceable. Plaintiff's arguments all miss the mark and demonstrate instead how Defendants' Motion is meritorious.

**II.    ARGUMENT**

"In light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Rizel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 968–69 (8th Cir. 1993) (citation omitted). Plaintiff's Opposition ignores this well-established legal principle. None of Plaintiff's arguments give rise to any doubt as to arbitrability here; but even if they could, the law requires that those doubts be resolved in Defendants' favor. *Id.* The Court should grant the Motion, compel the parties to arbitration, and stay all proceedings before this Court.

   **A. Defendants Have Properly Invoked and Have Not Waived Their Right to Enforce the Binding Arbitration Provision**

The case law is clear that Defendants' invocation of the Arbitration Provision at the current procedural moment is proper and has not been waived. And as for Plaintiff's waiver arguments regarding the doctrines of laches or estoppel, they must be raised in the arbitral forum as opposed to this Court.

### 1. Defendants' Motion Properly Precedes Substantial Movement of the "Litigation Machinery"

Plaintiff first argues that Defendants have waived their right to invoke the Arbitration Provision. Not so. A party waives a right to arbitrate only when it knows of its right to arbitrate and then acts inconsistently with that right, *i.e.*, by "substantially invok[ing] the litigation machinery rather than promptly seek arbitration." *In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 614 (8th Cir. 2024) (quotations omitted) (cleaned up). Plaintiff's own cited cases[1] demonstrate the kinds of "litigation machinery" that are required before a party can be deemed to have waived a right to arbitrate. (Opp. at 5.) Examples include: stipulating to proceed with discovery and scheduling a mediation, *see Pawn Am.*, 108 F.4th at 613; seeking enforcement of an arbitration agreement nearly *two years* after filing a motion to dismiss, while engaging in discovery in the interim, *see Lackie v. Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 994 (8th Cir. 2025); and filing an affirmative motion for a permanent injunction and seeking arbitration after receiving unfavorable rulings from the court on discovery, *see Breadeaux's Pisa, LLC v. Beckman Bros.*, 83 F.4th 1113, 1117–18 (8th Cir. 2023). No such circumstances exist in this case. To the contrary, the procedural history of this case demonstrates Defendants' persistent efforts to avoid waiving any known right or argument by promptly complying with their multiple rolling deadlines triggered by Plaintiff's Petition and injunction motion.

Plaintiff filed his Petition in Iowa state court on August 28, 2025, approximately six months ago. (ECF No. 1 ¶ 11.) The Petition asserted that the Casey's Rewards program was not relevant to the case and did not disclose that Plaintiff was a member of the program. (*Id.* ¶¶ 15–16; *see* Opp. at 12.) Defendants had only thirty days to evaluate the lawsuit's removability, a deadline set by

---

[1] Plaintiff also cites entirely inapposite cases, such as *Wildhawk Invs., LLC v. Brava I.P., LLC*, considering whether a party had waived its right to enforce a forum-selection clause, but not an arbitration provision. No. 3:20-cv-109, 2022 18539509 (S.D. Iowa Feb. 28, 2022).

2

statute that cannot be continued. 28 U.S.C. § 1446(b); *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) ("A defendant is generally barred from asserting any ground for removal not attempted within the thirty day period." (citation omitted)). The narrow and localized allegations in the Petition were not in alignment with the scope of Plaintiff's nationwide class claims, and this mismatch complicated the removal and amount-in-controversy analyses. (*See* ECF No. 1-1 ¶¶ 1, 7, 18, 21.) Nevertheless, Defendants diligently complied with the 28 U.S.C. § 1446(b) deadline to avoid any inadvertent waiver of their right to seek federal-court jurisdiction over a purported nationwide class action.

Furthermore, prior to removal, Plaintiff filed a motion in Iowa state court requesting an onerous and entirely unjustified temporary injunction against Defendants, which was then docketed in this Court as an active motion following removal. (*See* ECF No. 3.) Immediately upon removal, then, Defendants were faced with short deadlines to both oppose Plaintiff's improper injunction motion and to respond to the pleading. *See* Fed. R. Civ. P. 81(c)(2)(C) (setting the responsive pleading deadline in this case at seven days after removal).

While the parties agreed to a modest extension of the deadlines (*see* ECF No. 5), Defendants were nevertheless under time pressure to appropriately and promptly respond to Plaintiff's pleading and motion or risk waiver or default on an extremely burdensome injunction or class action demand. Defendants timely submitted their opposition to Plaintiff's injunction motion and responded to the opening pleading with a motion to dismiss and to strike per Federal Rule of Civil Procedure 12. (*See* ECF Nos. 7, 11.) Moreover, the work to prepare these responsive papers was encumbered by the vague, overbroad, and often indiscernible claims, allegations, and injunction language stated throughout Plaintiff's Petition and motion, as described in detail in Defendants' respective papers. (*See, e.g.*, ECF No. 7 at 8–11; ECF No. 16 at 6–7.)

Each of Defendants' filings—their Notice of Removal, opposition to Plaintiff's injunction motion, and responsive motion to Plaintiff's Petition—were required by the rules, and Defendants had to timely submit them or risk waiving their rights and positions. It is not clear that a motion to compel arbitration would have automatically stayed these deadlines prior to a ruling; and it is reasonable for Defendants to avoid any such risk. Defendants then turned their focus to the underlying facts of the dispute. Upon discovery that Plaintiff's individual dispute with Defendants was subject to the Arbitration Provision, Defendants promptly filed the present motion to stay and compel arbitration on January 29, 2026, only four months after the case was removed to this Court and approximately six weeks after the completion of the initial submission of the above-described papers. (ECF No. 28; *see* ECF Nos. 1, 27.)

This litigation remains in its infancy. Unlike the cases cited by Plaintiff, Defendants in this case have not agreed to proceed with discovery, have not held back a known right to arbitrate until receiving rulings from the Court, and have not sought an injunction order from this Court against Plaintiff. *Cf. Pawn Am.*, 108 F.4th at 613; *Lackie*, 143 F.4th at 994; *Breadeaux's*, 83 F.4th at 1117–18. The Court has not ruled on any of the parties' pending motions nor set any hearings. The parties have not agreed on a proposed scheduling order or discovery plan, nor has the Court entered any such order. These procedural circumstances are distinctly of the type in which courts will enforce an agreement to arbitration. *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991) (finding that a party did not waive its right to compel arbitration where "there was some pretrial litigation activity . . . and the limited discovery conducted will be usable in arbitration"); *Mainville v. Coll. Town Pizza, Inc.*, 629 F. Supp. 3d 913, 924 (D. Minn. 2022) (holding right to compel arbitration was not waived where the motion was filed "in a timely manner and before the parties engaged in extensive discovery"); *Pruteanu v. Team Select Home Care of Mo., Inc.*, No. 4:18-CV-

4

01640, 2019 WL 7195086, at *7 (E.D. Mo. Nov. 26, 2019) (finding that a party did not waive its right to arbitrate in part because "the parties have not participated in a scheduling conference, exchanged initial disclosures, or engaged in discovery"); *Birts v. Vermillion*, No. 08-CV-4011, 2011 WL 13152677, *4 (W.D. Ark. Mar. 14, 2011) (finding no waiver of the right to arbitrate because "[t]he Court is not convinced that the [moving party] w[as] trying to see how their case was going in federal district court before deciding whether they would be better off there or in arbitration"); *Pacheco v. PCM Const. Servs., L.L.C.*, 602 F. App'x 945, 948–49 (5th Cir. 2015) (finding no waiver of the right to arbitrate in part because the moving party had not propounded discovery and the court had not ruled on a pending motion to dismiss).

"[I]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Brondyke v. Bridgepoint Educ., Inc.*, 985 F. Supp. 2d 1079, 1097 (S.D. Iowa 2013) (quotation omitted) (finding that the right to compel arbitration had not been waived). There should be no doubt that Defendants have not waived their right to seek arbitration of this dispute. But even if Plaintiff's Opposition could be said to raise any doubt, that doubt is to be resolved in Defendants' favor as a matter of the unambiguous and well-established policy of federal law and the federal courts. *Id.*

### 2. The Doctrines of Laches and Estoppel Do Not Bar Defendants' Right to Enforce the Binding Arbitration Provision

Plaintiff argues that Defendants should be deemed to have waived their right to compel arbitration based on the doctrines of laches or estoppel. (Opp. at 7–9.) However, the law is clear that any waiver arguments predicated upon these doctrines must be decided *by the arbitrator* in forthcoming arbitration as opposed to the Court. *See N&D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 728–29 (8th Cir. 1976) (holding that "waiver in this 'laches' sense is generally an issue for the arbitrator" and compelling arbitration); *see also Sitzer v. Nat'l Ass'n of Realtors*, 12 F.4th

5

853, 856 (8th Cir. 2021) (holding that waiver arguments regarding "time limits, notice, laches, estoppel, or other conditions precedent" are reserved for the arbitrator) (quotation omitted). Accordingly, Plaintiff's invocations of laches and estoppel present "no colorable defenses to arbitration which are cognizable in the courts" and should be rejected. *N & D Fashions*, 548 F.2d at 729.

### B. The Arbitration Provision Is Binding and Enforceable

Plaintiff assented to the Arbitration Provision, the Arbitration Provision encompasses Plaintiff's disputes with Defendants, and Plaintiff's Opposition does not present any reason why this Court should not enforce it.

#### 1. Plaintiff Accepted the Terms and Conditions, Which Included the Binding Arbitration Provision

First, Plaintiff argues that he never assented to the version of the Casey's T&C that contain the Arbitration Provision. (Opp. at 9–10.) But in their opening brief, Defendants provided a step-by-step account of Plaintiff's assent to the operative Casey's T&C, to which Plaintiff does not respond: *i.e.*, (1) Plaintiff enrolled in the Casey's Rewards program on September 21, 2022, at which time he assented to the Casey's T&C; (2) the accepted T&C reflected the parties' agreement that Casey's may update the Casey's T&C at any time and that Plaintiff's election to continue use of the Casey's Rewards program would be effective acceptance of any such updates to the Casey's T&C; (3) on February 19, 2025, Casey's updated the Casey's T&C according to the parties' agreement; and (4) Plaintiff actively participated in the Casey's Rewards program after February 19, 2025, and by doing so, confirmed his assent to the February 19, 2025 Casey's T&C. (*See* ECF No. 28-1, Defendants' Brief in Support of Their Motion to Stay and Compel Arbitration (hereinafter "Defs. Br.") at 3.)

6

Plaintiff does not dispute these underlying facts in his Opposition, nor does he dispute that his ongoing participation in the Casey's Rewards program after February 19, 2025, constitutes his assent to the updated Casey's T&C. Instead, Plaintiff merely argues that there is "no evidence in the record" that he participated in the Casey's Rewards program after February 19, 2025. (Opp. at 10.) To confirm: Plaintiff affirmatively participated in the Casey's Rewards program on multiple occasions after February 19, 2025, including but not limited to purchases of goods by Plaintiff on his Rewards account dated February 24, April 11, July 4, July 31, and August 10, 2025. (*See* Second Declaration of Justin Coaldrake ¶¶ 4–5 (Mar. 5, 2026), attached hereto as Exhibit B.) Plaintiff has assented to the Arbitration Provision.

### 2. The Arbitration Provision Encompasses Disputes Regarding the Transactions Plaintiff Described in the Petition

The parties' agreement to arbitrate encompasses "any dispute, claim or cause of action ('Claim') between [Plaintiff] and [Defendants] . . . arising out of the use of the Site, the Services, and *any other actions with* [*Defendants*] (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory)." (*See* Arbitration Provision (emphasis added).) The plain language of the Arbitration Provision is both broad and clear. Furthermore, "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 700 (8th Cir. 2008).

The arbitration clause in this case is certainly—at minimum—"susceptible of an interpretation that covers the asserted dispute." *Lyster*, 239 F.3d at 945. Nevertheless, Plaintiff

7

raises two arguments suggesting the Court should construe the provision to be narrower than its plain terms. (Opp. at 10–12.) Neither prevails.

First, Plaintiff argues that the reference to the Arbitration Provision in the "preamble" of the Casey's T&C should in some way supersede or vitiate in part the actual arbitration agreement found in paragraph 27. (*See* Opp. at 11–12; *see also* Arbitration Provision at 1, 12, ¶ 27.) Plaintiff cites to no authority for this proposition, relying instead only on boilerplate case citations about ambiguous contracts. (Opp. at 12.) But there is no ambiguity. The preamble language states clearly that the Casey's T&C "contain a mandatory (binding) arbitration provision" and that the user should, "[f]or more details, see below." (ECF No. 28-3 at 1.) In other words, the preamble clearly refers users to the operative and fulsome Arbitration Provision, which provides details on matters not addressed by the preamble, including the applicable arbitration rules, the arbitrable body that will hear the dispute, the procedures for initiating arbitration, and instructions for opting out of the Arbitration Provision. (Arbitration Provision at 12, ¶ 27.) Plaintiff's argument that the Arbitration Provision is limited by the preamble is baseless.

Second, Plaintiff curiously invokes the canon of construction "*ejusdem generis*," which has no useful application here. (Opp. at 10–11). There is no ambiguity in the text defining the scope of the Arbitration Provision that would require the Court to resort to this interpretative canon. And even if an ambiguity did exist, Plaintiff's interpretation blatantly runs afoul of the rule against surplusage. *U.S. Bank, Nat'l Ass'n v. Bittner*, 986 N.W.2d 840, 848 (Iowa 2023) ("[W]e assume . . . that no part of an agreement is superfluous." (citing *Smith Barney, Inc. v. Keeney*, 570 N.W.2d 75, 78 (Iowa 1997)). Plaintiff's interpretation is a transparent attempt to remove the phrase "any other actions with us" from the Arbitration Provision for the purpose of excluding *post hoc* his present claim from the scope of the Arbitration Provision. This argument too has no support in the law and

must fail. *See Teamsters Loc. Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 715 (Iowa 2005) ("In using the doctrine as an interpretative aid, it is important to keep in mind that it is not applied in a vacuum, and disputes cannot be resolved by merely tying the issue 'to the procrustean bed of *ejusdem generis*.'"(quoting *United States v. Weadon*, 145 F.3d 158, 162 (3d Cir. 1998)).

The alleged purchases identified in the Petition that Plaintiff made at Defendants' stores fall within the ambit of the Arbitration Provision, and this Court should therefore enforce it here.

### 3. The Iowa Arbitration Act Does Not Govern the Enforceability of the Arbitration Provision

Plaintiff claims that his tort claims are not subject to arbitration because of a provision of the Iowa Arbitration Act, Iowa Code § 679A.1(2). (Opp. at 12–13.) But that statute is expressly preempted by federal law and is inapplicable. Plaintiff does not dispute that the Arbitration Provision is contained within a contract involving interstate commerce. (Defs. Br. at 5–6.) The Iowa Supreme Court has explicitly disclaimed application of the Iowa Arbitration Act here:

> The [Iowa] legislature has also provided that tort claims should not be subject to arbitration "unless otherwise provided in a separate writing executed by all parties to the contract." *Id*. § 679A.1(2)(c). The [Federal Arbitration Act, or FAA], however, does not recognize this limitation, and the FAA preempts contrary state law with respect to any "contract evidencing a transaction involving commerce." *See Heaberlin Farms, Inc. v. IGF Ins.*, 641 N.W.2d 816, 819 (Iowa 2002) (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272–75 (1995)).

*Karon v. Elliott Aviation*, 937 N.W.2d 334, 347 n.8 (Iowa 2020) (cleaned up). Accordingly, the Iowa Arbitration Act does not bear on the enforceability of the Arbitration Provision. The FAA controls, which does not prevent Plaintiff's tort claims from being submitted by arbitration.

### 4. Plaintiff's Argument That No Arbitration Provision Can Be Enforced Absent the Inclusion of the Word "Inviolate" Is Contrary to the Law

Finally, Plaintiff claims that the Arbitration Provision is unenforceable because the Arbitration Provision "doesn't even use the word 'inviolate' much less notify Plaintiff that the right being waived is the inviolate right to a jury trial." (Opp. at 13.) This is not true. The Arbitration

Provision provides clear notice of the jury trial waiver term. But Plaintiff's argument goes further to suggest that an arbitration provision must contain the specific word "inviolate" to be enforceable. (Opp. at 15.) This argument has no support in the law.

First, there is no stated requirement in the Iowa Constitution, FAA, or any other authority that an arbitration provision must include the specific word "inviolate" to be enforceable. The cases cited by Plaintiff—many of which are inapt criminal cases and none of which involve an agreement to waive the right to a jury trial in the context of an arbitration agreement—do not compel any such conclusion. (*See* Opp. at 13–16.) Only two of those cases even contain the word "inviolate": the first when quoting Federal Rule of Civil Procedure 38 (*see U.S. Bank Nat'l Assoc. v. Qualizza*, No. 4:21-cv-120, 2023 WL 3721332, at *1, 4 (E.D. Mo. May 30, 2023)); and the second when quoting in a footnote a statement by J. Edgar Hoover regarding law enforcement and criminals (*see Miranda v. Arizona*, 384 U.S. 436, 483 n.54 (1966)). There is no authority for Plaintiff's demand to elevate the word "inviolate" above all other considerations. This Court, together with many courts across the nation, rightly and commonly enforce arbitration agreements without any consideration of the presence of the word "inviolate" in the agreement. *See, e.g.*, *Dickerhoff et al. v. AMERCO et al.,* No. 1:21-cv-00017, Order on Defs. Motion to Compel Arbitration (S.D. Iowa September 17, 2021); *ACCU Steel, Inc., v. Legacy Bldg. Sols., Inc.*, No. 1:16-CV-00050, Order on Motion to Compel Arbitration (S.D. Iowa August 30, 2017); *Martin Ankeny Corp v. CTB Midwest Inc.*, No. 4:14-cv-00516, Order on Report and Recommendation (S.D. Iowa March 18, 2016); *see also, e.g.*, *Stifel*, 924 F.2d at 159; *Pruteanu*, 2019 WL 7195086, at *7.

Second, the Casey's T&C and the Arbitration Provision do in fact alert customers to the waiver of a jury trial—multiple times. The preamble to the Casey's T&C specifically states that

10

they "contain a mandatory (binding) arbitration provision and class action *and jury trial waiver*." (ECF No. 28-3 at 1 (emphasis added).) The section of the Casey's T&C containing the details of the Arbitration Provision is entitled "Mandatory Arbitration and Class Action and *Jury Trial Waiver*." (Arbitration Provision (emphasis added).) Moreover, the Arbitration Provision itself states, in all capital letters, that "THERE IS NO JUDGE OR JURY IN ARBITRATION, AND COURT REVIEW OF AN ARBITRATION AWARD IS VERY LIMITED." (*Id.*) In other words, the jury trial waiver portion of the Arbitration Provision is clear and unambiguous.

Under these circumstances, it cannot be said that Plaintiff did not voluntarily and knowingly elect to waive his right to trial by jury. When, as here, a party "ha[s] voluntarily and knowingly elected to give up the right to trial by jury it is incumbent on a court to enforce the agreement just as it would be to enforce the right to trial by jury in the absence of such an agreement." *Morris v. McFarland Clinic P.C.*, No. 4:03-cv-30439, 2004 WL 306110, at *5 (S.D. Iowa Jan. 29, 2004). Accordingly, this Court should enforce the jury trial waiver term of the Arbitration Provision.

### III. CONCLUSION

For the reasons stated above and in Defendants' opening brief, Defendants respectfully request that this Court compel Plaintiff to submit his claims against Defendants to arbitration and stay all proceedings in this Court during the pendency of the arbitration.

Dated: March 5, 2026                    **FAEGRE DRINKER BIDDLE & REATH LLP**

                                        */s/ Nick Klinefeldt*
                                        Nicholas A. Klinefeldt, AT0008771
                                        David Yoshimura, AT0012422
                                        Carolyn A. Gunkel, AT0008944
                                        Emily R. O'Brien, AT0015757
                                        801 Grand Avenue, 33rd Floor

11

Des Moines, IA, 50309
Telephone: (515) 248-9000
Fax: (515) 248-9010
Email: *nick.klinefeldt@faegredrinker.com*
　　　*david.yoshimura@faegredrinker.com*
　　　*carolyn.gunkel@faegredrinker.com*
　　　*emily.obrien@faegredrinker.com*

**ATTORNEYS FOR DEFENDANTS CASEY'S RETAIL COMPANY, CASEY'S GENERAL STORES, INC., AND CASEY'S MARKETING COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2026, a true copy of the foregoing document was served upon all Parties of record through the Court's CM/ECF electronic filing system, with a copy sent via electronic notice to all counsel of record.

*/s/ Paulette Ohnemus*
